IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Mountain Valley Pipeline, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:17-cv-4214 |
| | ) | |
| An Easement To Construct, Operate | ) | |
| and Maintain a 42-Inch Gas | ) | |
| Transmission Line Across Properties | ) | |
| in the Counties of Nicholas, | ) | |
| Greenbrier, Monroe, Summers, Braxton | ) | |
| Harrison, Lewis, Webster, and Wetzel, | ) | |
| West Virginia, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS AND, SUBJECT THERETO, DEFENDANTS' ANSWER, OBJECTIONS, AFFIRMATIVE DEFENSES, DEMAND FOR JUST COMPENSATION AND STATE PROCEDURAL PROTECTIONS, AND DEMAND FOR JURY TRIAL**

Defendants Orus Ashby Berkley, Reinhard Bouman, Ashofteh Bouman, Tammy A. Capaldo, Charles F. Chong, Rebecca Ann Eneix-Chong, Gerald Wayne Corder, Randall N. Corder, Hilry Gordon, Robert M. Jarrell, William Gregory Lloyd, Jeffrey Dewayne Osborne, Kiranasa Swami, Ronald Tobey, Elizabeth Tobey, Brian Van Nostrand, Helen Montague Van Nostrand, and Allan Walter Lehr (collectively, "Landowners"), by counsel, file this Motion to Dismiss Mountain Valley Pipeline, LLC's ("MVP") Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted and, subject thereto, file their Answer, Objections, Affirmative Defenses, Demand for Adequate Compensation and State Procedural Protections, and Demand for Jury Trial.

**PART I: MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Landowners move the Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and because Plaintiff has failed to state a claim upon which relief can be granted. In support of their motion, Landowners respectfully submit the following points and authorities:

**INTRODUCTION**

MVP filed this case to condemn pipeline easements across hundreds of properties for its planned installation of 303.5 miles of 42-inch-diameter pipeline (the "Pipeline" or the "Project") in West Virginia and Virginia. The Court lacks subject-matter jurisdiction—and should therefore dismiss this suit—for two reasons:

1.      Pipeline companies cannot commence condemnation proceedings until they have obtained a certain kind of Certificate of Public Convenience and Necessity ("Certificate" or "CPCN") from the Federal Energy Resource Commission ("FERC" or "Commission"). MVP obtained the wrong kind of certificate; its certificate is "conditional," which means MVP still has to clear numerous administrative and regulatory hurdles before it can commence condemnation.

2.      Private entities cannot condemn private property, as MVP seeks to do in this suit, unless they first demonstrate an ability to pay just compensation to all those whose property they seek to take. The Court has no ability to grant MVP the relief it seeks until and unless MVP makes that showing, which MVP has not even attempted to do.

2

The same two reasons establish that MVP has failed to state a claim on which relief can be granted.

FACTS

I.     **FERC's Regulatory Policies**

A.     **Overview**

FERC oversees natural-gas companies, which the Natural Gas Act defines as "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 U.S.C. §717(c). FERC's responsibilities include rate-setting, oversight, and, critically, issuance of CPCNs authorizing construction and operation of interstate gas pipelines. By statute, any entity that satisfies constitutional prerequisites and receives an unconditional certificate has the power of eminent domain. 15 U.S.C. §717f(h).

B.     **No Public-Use Determination**

Because the power of eminent domain attaches to every "holder of a certificate of convenience and necessity" under section 7f(h) of the Natural Gas Act, the constitutionality of the eminent-domain provisions hinges on whether a certificate issued by FERC serves a public use and a public necessity. By its own admission, however, FERC does not consider a determination of "public use" to be a necessary part of a grant of a certificate. *See Transcontinental Pipeline*, 158 FERC ¶ 61,125 (2017). Instead, FERC reasons that its determination of a public necessity is sufficient to allow certificate holders to exercise the power of eminent domain, as Congress has determined that applicants who satisfy FERC's public-necessity criteria will build or

operate interstate pipelines that, under the NGA, comply with the Constitution's public-use requirement.

In 1999, FERC adopted its Certificate Policy Statement,[1] which memorialized FERC's process for evaluating applications for certificates. As the Certificate Policy Statement sets out, FERC first determines whether there is a need for the project, examining factors including market demand, the amount of pipeline capacity contractually committed, and lack of subsidization by existing ratepayers. FERC's review of need is superficial at best, as FERC does not "look behind precedent agreements" (*see e.g., Transcontinental Gas Pipe Line Co. LLC*, 157 FERC ¶ 61,095, at P. 5 (2016)), even though the Certificate Policy Statement suggests that affiliate contracts are less probative than those negotiated at arms' length.

Finally, FERC balances the project's benefits against project impacts to the environment and landowners, using a sliding scale approach to determine whether to grant a certificate.

### C.    No Bond or Asset Requirement

FERC does not require applicants to post bond or to demonstrate assets sufficient to ensure payment of just compensation to landowners. In fact, FERC has explicitly refused requests to condition issuance of a certificate on the project sponsor's posting bond or proving adequate assets. Accordingly, landowners receive no assurance that the private, for-profit entities condemning them will actually—and ultimately be able to—pay just compensation.

---

[1] *Certification of New Interstate Natural Gas Pipeline Facilities,* 88 FERC ¶ 61,227 (1999), clarified, 90 FERC ¶ 61,128, further clarified, 92 FERC ¶ 61,094 (2000) (Certificate Policy Statement).

### D.      Extra-Statutory "Conditional" Certificate Program

FERC has also implemented a "conditional" certificate program that is not expressly authorized by the Natural Gas Act. Conditional certificates are nominally issued under section 7f(e) of the Natural Gas Act, which grants FERC the power to "attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require." As a matter of practice, however, FERC routinely includes a standard condition in most certificates that states:

> Prior to receiving written authorization . . . to commence construction of any project facilities, [the applicant] shall file with the Secretary documentation that it has received all applicable authorizations required under federal law (or evidence of waiver thereof.)

In other words, FERC routinely grants certificates for projects that are not yet legally authorized because they depend on the subsequent grant of additional permits by other federal and state agencies.

Although FERC characterizes conditional certificates as "incipient authorizations without force or effect," (*see e.g., Ruby Pipeline LLC*, 133 FERC ¶61,015 (2010) at P. 18), FERC interprets those certificates as conferring the same power of eminent domain as non-conditioned certificates. FERC has, in fact, expressly refused to restrict eminent-domain powers under conditional certificates even though they relate to projects that may never receive the proper approvals and therefore may never be constructed at all.

II.     **MVP's Proposed Pipeline Project**

MVP's Project consists of (1) approximately 303.5 miles of 42-inch-diameter pipeline in West Virginia and Virginia; (2) three new compressor stations providing approximately 171,600 nominal horsepower (hp) of compression; and (3) other minor facilities. The MVP pipeline extends from an interconnection with Equitrans's existing pipeline in Wetzel County, West Virginia to a termination point at Transco's Zone 5 Compressor Station 165 (which is also a gas-trading hub for the mid-Atlantic) near Transco Village in Pittsylvania County, Virginia.

As the MVP Pipeline makes its way through the mountainous topography of West Virginia and Virginia, it will cut large swaths through hundreds of acres of forest, cross more than 1,000 bodies of water, and traverse miles of treacherous karst-laced terrain. In addition to its substantial and devastating environmental impacts, the MVP pipeline will jeopardize the safety and economic livelihood of landowners along its path, assaulting their statutorily and constitutionally protected private-property rights by taking hundreds of tracts of property for a private enterprise.

In late October 2014, MVP initiated the pre-filing application process, an informal review period that enables a project sponsor to "vet" its proposal. At that time, MVP began contacting landowners to survey the properties to assist in preparation of its application and, in some instances, to initiate negotiations on easement rights for the proposed pipeline.

A year later, following the conclusion of the pre-application process, MVP submitted its application under section 7 of the Natural Gas Act seeking a CPCN to construct, operate, and maintain the MVP Project. In its application, MVP declared that

6

its primary purpose for constructing its Pipeline is to deliver shale gas to Transco Station 165, a gas-trading hub for the Mid-Atlantic Market and a strategic point for serving the growing Mid-Atlantic and southeastern markets, as well as unidentified "existing and future markets" directly along the Pipeline's route.

On October 13, 2017, FERC issued a Certificate for the MVP Project, with the FERC Chair and one Commissioner voting to approve the certificate and one Commissioner dissenting. *Mountain Valley Pipeline*, 161 FERC ¶61,043 (2017). Condition 9 of the Certificate requires ACP to file documentation that it has received all applicable authorizations required under federal law (or evidence thereof) as a prerequisite to commencement of construction. As of the date of the Certificate, MVP had not received numerous federal authorizations including the section 401 water quality certificates from Virginia and U.S. Army Corps of Engineers' section 404 wetlands permit. At present, MVP still lacks each of these authorizations.

On October 24, 2017, MVP initiated this action and a companion action seeking to condemn easements across hundreds of properties in the Pipeline's path through Virginia and West Virginia. According to MVP, section 7f(h) of the Natural Gas Act gives it the power to not only take these private property interests from Landowners, but also to take immediate possession of their properties in advance of paying—or even determining—the compensation it owes them. CM/ECF No. 1 at Ex. 1.

## LEGAL STANDARD

Plaintiff carries the burden of proving the existence of subject-matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A motion to dismiss a complaint for lack of subject-matter

jurisdiction "addresses whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the plaintiff's] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). A court should grant such a motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted).

## ARGUMENT AND AUTHORITIES

### I.   The Court Lacks Jurisdiction Over This Suit Because MVP's Conditional Certificate Does Not Give It Condemnation Power.

15 U.S.C. §717f(e) provides that "the Commission shall have the power to attach to the issuance of the certificate . . . such reasonable . . . conditions as the public convenience and necessity may require." The Commission often uses this language to grant certificates before a project is fully permitted by all relevant authorities. In other words, some FERC certificates, like MVP's, are "conditional on" the applicant's eventually obtaining those permits. But legislative history and case law indicate that this is the wrong way to interpret the Commission's conditioning power under §717f(e). These sources indicate that the statute empowers the Commission to impose "conditions" on pipeline activity in the sense of "limitations," not to make certificates "conditional" in the sense of needing to satisfy prerequisites before pipeline activity can commence.

An analogy illustrates the difference between conditions as prerequisites and conditions as limitations. Suppose a teenager wants to use her parents' car. The parents can impose two sorts of "conditions":

- "You can use the car if you finish your homework first." This sort of "condition" is a *prerequisite* to using the car.

- "You can use the car, but you must be home by 10 P.M." This sort of "condition" is a *limitation* on the use of the car.

When the Commission grants a "conditional" certificate before an applicant has obtained all necessary permits, it is acting like the parents in the first (prerequisite) sense. In contrast, when the Commission grants a "conditional" certificate by imposing restrictions on how a fully permitted applicant can operate, the Commission is acting like the parents in the second (limitation) sense.

The problem with granting "conditional" certificates in the prerequisite sense is that Congress never intended "conditions" in §717f(e) to be interpreted that way. Rather, it intended "conditions" to mean "conditions *on the terms of the proposed service itself*"—i.e., *limitations*, not prerequisites. *N. Nat. Gas Co., Div. of InterNorth, Inc. v. F.E.R.C.*, 827 F.2d 779, 782 (D.C. Cir. 1987) (emphasis added). Historically, the cases considering §717f(e) "conditioning power" concern "rates and contractual provisions for the services to be certificated," not whether those services can begin acquiring property via condemnation before they are fully permitted. *Panhandle E. Pipe Line Co. v. F.E.R.C.*, 613 F.2d 1120, 1131-32 (D.C. Cir. 1979).

The Supreme Court has observed that the "conditions" clause in "Section 7(e) vests in the Commission control over the conditions *under which gas may be initially dedicated to interstate use*" so that "the consuming public may be protected while the justness and reasonableness of the price fixed by the parties is being determined under other sections of the Act." *Atl. Ref. Co. v. Pub. Serv. Comm'n of N.Y.*, 360 U.S. 378, 389, 392 (1959) (emphasis added). "Section 7 procedures in such situations thus act to

hold the line awaiting adjudication of a just and reasonable rate." *Id*. at 392. This purpose is clearly one of imposing limitations on pipeline activity, not of allowing pipelines to commence operations before they are fully permitted. "[T]he Commission may not use its §7 conditioning power to do indirectly . . . things that it cannot do at all." *Am. Gas Ass'n v. F.E.R.C.*, 912 F.2d 1496, 1510 (D.C. Cir. 1990).

If a certificated entity still has additional permits to obtain, there is a chance it will fail to obtain those permits. If that happens, the entity will never be allowed to begin operations—and it will have taken private property for no reason (i.e., without a public necessity) in violation of the Fifth Amendment.

This concern—that an applicant with a conditional certificate may never become fully permitted—is not merely theoretical here. MVP is far from obtaining all necessary permits, including: final authorizations by the Forest Service and Department of the Interior for permission to cross federal lands; authorization from the U.S. Army Corps of Engineers for all stream and wetland crossings; and multiple Clean Water Act authorizations from the Commonwealth of Virginia. All of those permits require compliance with substantive standards that cannot be presumed by the FERC's grant of a certificate of convenience and necessity.

With such uncertainty that the MVP project will ever commence construction, let alone complete construction and begin transporting gas, there is simply no public necessity for it to begin taking private property. And taking private property without public necessity is constitutionally impermissible, so this Court cannot preside over a proceeding where MVP attempts to do just that.

The Court should dismiss this case and require MVP to re-file once it has obtained all necessary permits and its CPCN is no longer conditional.

## II.    The Court Lacks Jurisdiction Over This Suit Because Plaintiff Has Not Shown It Can Pay Just Compensation.

The Court's jurisdiction derives from 15 U.S.C. §717f(h), which provides:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located.

Thus, whether the Court has jurisdiction depends on whether the Court deems MVP a "holder of a certificate of public convenience and necessity."

As explained above, the Court should not deem MVP a "holder of a certificate of public convenience and necessity" because MVP's "conditional" certificate is not the sort of certificate contemplated by the statute's drafters. But there is a second, independent reason why the Court should not deem MVP a "holder of a certificate of public convenience and necessity" for purposes of interpreting the jurisdictional statute: MVP has not shown it can pay just compensation for the property it seeks to take.

It is axiomatic that the Takings Clause of the Fifth Amendment requires the payment of "just compensation" when private property is taken for public use.[2] Because the duty to pay just compensation is "inseparable from the exercise of the right of

---

[2] U.S. CONST. amend. V.

eminent domain," any act granting condemnation power "must provide for compensation" with absolute certainty.[3]

It is not enough for a statute or court order simply to say that just compensation will be paid. Rather, "the owner is entitled to reasonable, certain, and adequate provision before his occupancy is disturbed."[4] Proving "adequate provision" of just compensation requires showing that "the means for securing indemnity [are] such that the owner will be put to no risk or unreasonable delay."[5]

To satisfy the Takings Clause, "compensation must be either ascertained and paid to [the landowner] before his property is thus appropriated, or an appropriate remedy must be provided, *and upon an adequate fund*, whereby he may obtain compensation through the courts of justice."[6] In other words, if the taker wants to take the property before compensation is finally decided by the court, the taker must have an "adequate fund" for the payment of compensation awards.

Different rules apply to government takers and private entities in proving an "adequate fund" for just-compensation awards. When the taker is a governmental entity, the pledge of "the public faith and credit" is enough to ensure just compensation.[7] But when, as here, the taker is a private entity, the taker "has neither sovereign authority nor the backing of the U.S. Treasury to assure adequate provision of payment." *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa County*, 550 F.3d 770, 775 (9th Cir. 2008). Thus, a private taker must do more than just promise to

---

[3] *Sweet v. Rechel*, 159 U.S. 380, 400-01 (1895) (citation omitted).
[4] *Id*. at 403.
[5] *Id.* at 401 (citation omitted).
[6] *Id.* at 406 (emphasis added).
[7] *Wash. Metro. Area Transit Auth. v. One Parcel of Land in Montgomery County*, 706 F.2d 1312, 1320-21 (4th Cir. 1983).

pay to "satisf[y] the constitutional requirements" of the "'just compensation' guarantee."[8] In *Washington Metropolitan Area Transit Authority v. One Parcel of Land*, the taker met that burden by showing that it (1) "ha[d] the ability to be sued" and (2) owned "very substantial assets" such that "just compensation [was], to a virtual certainty, guaranteed."[9]

Here, MVP has not met that test. While MVP may be sued, it has not shown that it has such "substantial assets" that just compensation is guaranteed "to a virtual certainty."[10] The Commission never required such a showing before issuing a CPCN to MVP, which means there is no record of MVP's assets—whether encumbered or unencumbered—in the Commission's docket. Nor has MVP submitted any evidence of its assets to the Court.

Moreover, there is ample reason to worry that MVP lacks sufficient assets to guarantee just compensation. MVP is a Delaware limited-liability company and is a special-purpose, joint-venture entity set up in 2015 for the sole purpose of this particular pipeline project.[11] As the Commission recognizes in its Order, MVP "does not currently own or operate any interstate pipeline facilities" and has "no existing customers." Order at 2, 11.

As the Commission further recognizes, "greenfield pipelines undertaken by a new entrant in the market" like MVP "face higher business risks than existing pipelines

---

[8] *Id.* at 1321.
[9] *Id.; see also E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 824 (4th Cir. 2004) (finding adequate assurance that landowners would receive just compensation because taker's parent company reported earnings of $1.17 billion from its natural-gas transmission division in year before taking).
[10] *Id.*
[11] Amended and Restated Certificate of Formation of Mountain Valley Pipeline, LLC (filed Mar. 11, 2015).

proposing incremental expansion projects." Order at 35. Even disregarding its greenfield status, MVP is inherently at risk of going bust because it is a private company. Indeed, its owner-operator has already admitted in an SEC filing that MVP "has insufficient equity to finance its activities during the construction stage of the project."[12]

Given all this, Landowners facing condemnation by this fledgling venture do not have "adequate provision" or an "adequate fund" to ensure that "just compensation is, to a virtual certainty, guaranteed."[13] MVP cannot overcome this problem by arguing that potential earnings from the Project "would probably be sufficient to meet and extinguish claims for damages for lands taken."[14] As the Supreme Court has explained, such arguments and expectations "f[all] short of the constitutional requirement that the owner of property shall have prompt and certain compensation, without being subjected to undue risk or unreasonable delay."[15]

In short, taking private property without a showing of adequate funds to pay just compensation is constitutionally impermissible. Yet if the Court deems MVP a "holder of a certificate of public convenience and necessity" for purposes of the NGA's jurisdictional statute, thereby allowing this suit to proceed despite MVP's failure to show it can pay just compensation, the Court will facilitate exactly that kind of constitutional violation.

Per the doctrine of constitutional avoidance, the Court should decline to deem MVP a "holder of a certificate of public convenience and necessity" for purposes of the

---

[12] EQT Midstream Partners, LP 2016 Annual Report, at 78.
[13] *Wash. Metro.*, 706 F.2d at 1320-21.
[14] *Sweet*, 159 U.S. at 402.
[15] *Id.*

14

NGA's jurisdictional statute if doing so is reasonable. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009). It is indeed reasonable on these facts. Under the NGA, an applicant can obtain a certificate only "if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of this chapter." One of the "acts" contemplated by "this chapter" of the NGA is eminent domain, *see* 15 U.S.C. §717f(h), and the only way "properly to do" eminent domain is to pay just compensation. Thus, to comply with 15 U.S.C. §717f(e), the Commission must make a finding that an applicant "is able and willing properly to" pay just compensation. The Commission never made that finding here, nor is there any independent evidence before the Court that MVP has the assets to pay just compensation.

Consistent with the doctrine of constitutional avoidance, the Court should conclude that MVP's failure to show it can pay just compensation means MVP is not the sort of "holder of a certificate of public convenience and necessity" contemplated by the NGA's jurisdictional statute. That conclusion, in turn, means the Court lacks jurisdiction under the plain wording of 15 U.S.C §717f(h).

### III.     Independently Warranting Dismissal, MVP Has Failed to State a Claim on Which Relief Can Be Granted.

The foregoing arguments also establish that dismissal is warranted under Rule 12(b)(6). Without an unconditional certificate and a showing that it can pay just compensation, MVP cannot obtain the relief it seeks in this Court.

CONCLUSION

The Court should grant Defendants' motion to dismiss the Complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted.

PART II: ANSWER

Subject to Defendants' Motion to Dismiss above, Defendants' hereby file their Answer, Objections Pursuant to Rule 71.1(e)(2)(C), Affirmative Defenses, Demand for Adequate Compensation and State Procedural Protections, Statements Required by Rule 71.1(e)(2)(A) and (B) (regarding the nature and extent of property interests), and Demand for Jury Trial, as follows:

1.     To the extent Paragraph One of the Complaint asserts legal conclusions, an answer is neither required nor submitted. Landowners lack sufficient knowledge to admit or deny the remaining allegations in Paragraph One and call for strict proof thereof.

2.     Landowners have not yet claimed entitlement to an amount of compensation and will not know what their property interests are worth until determined by an expert. Landowners can neither admit nor deny the remaining allegations of Paragraph Two of the Complaint and call for strict proof thereof.

3.     Landowners admit that they own real property in fee within the Southern District of West Virginia. To the extent Paragraph Three alleges that venue is proper under the cited statute, this asserts a legal conclusion to which a response is neither required nor submitted. Landowners can neither admit nor deny the remaining allegations of Paragraph Three of the Complaint and call for strict proof thereof.

4.     To the extent Paragraph Four of the Complaint asserts legal conclusions, an answer is neither required nor submitted. To the extent Paragraph Four alleges facts, Landowners lack sufficient knowledge to admit or deny the facts alleged and call for strict proof thereof.

5.     Landowners admit that on October 13, 2017, the Federal Energy Regulatory Commission ("FERC") issued an Order granting MVP the certificate attached to the Complaint as Exhibit B, which speaks for itself. Landowners can neither admit nor deny the accuracy of Exhibit B and call for strict proof thereof. Landowners affirmatively allege that the certificate attached to the Complaint as Exhibit B is "conditional," which means MVP still has to clear numerous administrative and regulatory hurdles before it can commence condemnation of Landowners' property interests as it seeks in its Complaint. Landowners deny that MVP has the right to condemn Landowners' property interests unless MVP can first demonstrate an ability to pay just compensation to all those whose property they seek to take. Landowners deny the remaining allegations in Paragraph Five of the Complaint and call for strict proof thereof.

6.     Landowners deny that "[t]he MVP Project seeks to help meet the public's demand for natural gas in the Mid- and South Atlantic regions of the United States," and affirmatively allege that the public's demand for natural gas in these regions continues to decrease due primarily to the existing abundant supply of natural gas. Further, in light of the decrease in demand for—and abundant supply of—natural gas in these regions, Landowners allege that MVP's proposed Project has such a

negative impact on the utility and market value of large amounts of private properties as to be neither in the public's best interest, nor convenient, nor necessary.

7.     Landowners deny that the easements MVP seeks to acquire across Defendants' properties are neither necessary to the public, nor convenient to the public, nor in the public's best interest. To the extent Paragraph 7 of the Complaint alleges facts, Landowners lack sufficient knowledge to admit or deny them and call for strict proof thereof.

8.     Landowners deny that MVP has attempted to negotiate mutually agreeable easement agreements, and affirmatively allege that easement negotiations between MVP's land agents and private property owners were intended to intimidate and instill fear in owners to motivate them to sign MVP's form easement agreements conveying rights well beyond what MVP needs or was granted in its Certificate. Landowners deny the remaining allegations in Paragraph 8 and call for strict proof thereof.

9.     To the extent Paragraph 9 of the Complaint asserts legal conclusions, an answer is neither required nor submitted. Landowners affirmatively deny that the property interests MVP seeks to acquire as described in the Complaint are necessary to construct, operate, or maintain its Pipeline. Landowners affirmatively allege that the certificate attached to the Complaint as Exhibit B is "conditional," which means MVP still has to clear numerous administrative and regulatory hurdles before it can commence condemnation of Landowners' property interests as it seeks in its Complaint. Landowners further deny that MVP has the right to condemn Landowners' property interests unless and until MVP can first demonstrate an ability to pay just compensation

to all those whose property they seek to take. Landowners deny the remaining allegations in Paragraph 9 of the Complaint and call for strict proof thereof.

10.     Landowners deny the allegations set forth in Paragraph 10 of the Complaint and affirmatively allege the property interests MVP seeks to acquire in this action are unnecessary. Further, Landowners affirmatively allege that the maps have insufficient descriptions to transfer on the public records real property rights of the nature MVP seeks in this proceeding and deny that all of the easements are located over and along the route approved by FERC. As to Exhibit C, the document speaks for itself, but Landowners do not admit the accuracy of any information contained therein. Landowners lack sufficient information to admit or deny the remaining allegations in Paragraph 10 of the Complaint and call for strict proof thereof.

11.     Landowners deny that MVP has any of the rights it describes in Paragraph 11 of the Complaint. Landowners further deny that any of the easements or rights described in Paragraph 11 are necessary and affirmatively allege that MVP seeks to acquire more rights than it needs to construct, operate, and maintain its Pipeline. Landowners further affirmatively allege that the Pipeline will provide no significant public use, purpose, benefit, or interest, but instead will enable domestic natural gas to be transported to foreign overseas markets for the private gain of MVP and at the direct cost and expense to Landowners without their consent. Landowners lack sufficient information to admit or deny the remaining allegations in Paragraph 11 and call for strict proof thereof.

12.     To the extent Paragraph 12 of the Complaint alleges facts, Landowners lack sufficient information to affirm or deny them and call for strict proof thereof.

Landowners deny that MVP has the right to place any of the limitations it intends to place upon Landowners' properties as described in Paragraph 12 of the Complaint. Further, Landowners affirmatively allege that the depth of the Pipeline is not set forth in the Complaint, the interference with Landowners' cultivation and use of their properties will be permanent, and the negative impact upon the values of their properties will be substantial. Landowners affirmatively allege that the limitations MVP intends to place upon Landowners' properties are one of multiple contributing factors in the diminution in value that MVP's Project will cause to Landowners' properties.

13.    Paragraph 13 of the Complaint alleges facts relating to ownership interests of each of the named defendants in the Complaint's attached Exhibit A in certain real properties described therein in which MVP seeks to acquire property rights in this proceeding. Landowners are without knowledge of facts alleged relating to the ownership interests of other defendants herein, and therefore deny the same and call for strict proof thereof. Landowners admit that they own fee simple interests in the real properties described in certain lines in Exhibit A attached to the Complaint where their respective names appear, but lack sufficient information to admit or deny the allegations in paragraph 13 of the Complaint and call for strict proof thereof. As to the property descriptions contained in Exhibit A, Exhibit A speaks for itself, but Landowners do not admit the accuracy of any information contained therein. Landowners further affirmatively allege that none of the exhibits have descriptions sufficient to transfer on the public records real property rights or interests of the nature being sought in this proceeding.

///

**GROUNDS OF DEFENSE**

1.      Plaintiff has not obtained all of the necessary approvals for the proposed Mountain Valley Pipeline project (the "Project," or the "Pipeline"), and therefore its attempt to exercise the eminent domain power is premature and should be dismissed. Specifically, Plaintiff has not satisfied at least the following conditions for its Project:

> a.      Plaintiff has not obtained a water crossing permit from the Commonwealth of Virginia for the hundreds of streams and wetland crossings along the proposed pipeline's path in Virginia. Such a permit is a condition precedent to the ability of Plaintiff to construct its proposed Project.

> b.      Plaintiff has also not obtained the appropriate permits from the Virginia Marine Resources Commission.

> c.      Plaintiff has not obtained a permit under §404 of the Clean Water Act, 33 U.S.C. §1344, from the U.S. Army Corps of Engineers, which, for the proposed project, requires the input of the Pittsburgh, Huntington, and Norfolk Districts of the Army Corps of Engineers.

> d.      Plaintiff has not obtained final approval under §106 of the National Historic Preservation Act, 54 U.S.C. §306108, from the Virginia Department of Historic Resources.

   e. Plaintiff has not obtained authority from the Bureau of Land Management that is required to construct its Pipeline through lands of the U.S. Forest Service.

  2. Plaintiff has failed to establish that it has the right of eminent domain required to move forward with its Project because it has failed to obtain the proper approvals as stated directly above in Paragraph 1. Thus, its Certificate remains conditional under subsection (e) of the Natural Gas Act, 15 U.S.C. 717f. Moreover, Plaintiff's allegations that its request for immediate entry onto Landowners' properties is justified by urgency are without merit because Plaintiff cannot begin construction of its Pipeline until it obtains all of the approvals listed directly above in Paragraph 1.

  3. Plaintiff has failed to establish that it has an ability to pay just compensation to all those whose property they seek to take. The Court has no ability to grant Plaintiff the relief it seeks until and unless Plaintiff makes that showing, which Plaintiff has not even attempted to do.

  4. Plaintiff has no power of quick-take similar to that granted to the federal government in the *Declaration of Taking Act*, 40 U.S.C. §3114(b), as Congress granted natural gas companies the ordinary right of eminent domain under Section (h) of the NGA that only provides possession upon payment of compensation following trial.

  5. A judicial grant of Plaintiff's request for immediate access and entry upon Landowners' properties prior to the determination of just compensation will violate the doctrine of separation of powers, in that only Congress can grant MVP quick-take power, which it has not granted in the NGA.

6.     FERC cannot lawfully grant the right of eminent domain delegated to it by Congress via the NGA because Congress' delegation of the power under 15 U.S.C. §717f(h) is overly broad. Under the non-delegation doctrine, Congress must properly limit the exercise of any delegated power by setting forth an intelligible principle—a standard— for the regulatory body to follow in its case-by-case assessments. Congress failed to set forth any intelligible principle to FERC under the NGA. In doing so, Congress delegated not only the authority to execute the law to FERC but also the authority to determine what the law shall be, which is impermissible under the Constitution, regardless of whether the standard applied by FERC could even pass constitutional muster, which it does not here. Because Congress' delegation of the power of eminent domain to FERC is overly broad, FERC cannot lawfully exercise the power of eminent domain and cannot confer the power to MVP or any other natural gas company.

7.     Plaintiff's Complaint describes rights to be acquired in Landowners' properties that exceed the rights granted by FERC in its Certificate, including, but not limited to, the right to use Defendants' private roads and properties to access Plaintiff's proposed easements.

8.     Plaintiff's proposed Project and the regulatory approval process before the FERC are the subject of multiple lawsuits pending in other courts that would require that the Project not proceed as Plaintiff is proposing here. *See, e.g., Berkley, et al. v. Mountain Valley Pipeline, LLC, et al.*, Case No. 7:17cv357 (W.D. Va. filed July 27, 2017); *Bold Alliance, et al. v. Federal Energy Regulatory Common, et al.*, Case No. 1:17cv 1822 (D. D.C. filed Sept. 5, 2017). This Court should permit these lawsuits to be

fully adjudicated before permitting MVP to proceed with its attempt to exercise the extraordinary power of eminent domain in this matter.

9.      The Acting Chair of FERC, Commissioner LaFleur, wrote a dissenting opinion (the second time a dissent by a FERC commissioner has ever been written in a NGA Section 7 gas pipeline certificate case) in a 2-1 vote approving MVP's certificate, concluding that MVP's project as proposed is not in the public interest for two reasons: (a) the FERC records demonstrate that regional needs may be met by *alternate approaches* that could provide significantly fewer environmental impacts; and (b) the *need* for gas to be provided by the MVP proposed Project is unknown, a fact that shifts the balance analysis toward denial of the certificate. *Mountain Valley Pipeline, LLC, Equitrans, L.P.* 161 FERC ¶61,744. Thus, these issues should be thoroughly discovered, briefed, argued, and adjudicated before construction of a project of this magnitude is allowed to begin on the private properties of Landowners.

10.     Plaintiff's proposed Project violates Section 4(f) of the *U.S. Department of Transportation Act*, 49 U.S.C. §303 and 23 U.S.C. §138.

11.     Plaintiff's proposed Project violates Article III, Section 9 of the West Virginia Constitution and the Fifth Amendment to the U.S. Constitution.

12.     Plaintiff has failed to comply with the Uniform Policy on real property acquisition practices, 42 U.S.C. §4651 and the *Uniform Relocation Assistance Act*, 42 U.S.C. §4621-4638, as no appraisals have been presented to Landowners in order to provide evidence of value of the easements Plaintiff seeks in this lawsuit.

13.     At least 20 requests for a rehearing by FERC have been filed as it pertains to Plaintiff's proposed Project. *See* FERC Docket No. CP16 - 10. Until FERC

acts on these Petitions for rehearing, Plaintiff's attempt to invoke the power of eminent domain to take private property is premature and inappropriate.

14.     The Complaint, as amended, lacks sufficient detail as to the nature and interest in the property rights Plaintiff seeks and thus fails to apprise Landowners of what Plaintiff is taking from them under federal or West Virginia law. Further, the Complaint fails to authenticate or otherwise establish that the easements to be condemned as set forth in the exhibits to the complaint conform to the alignment sheets of the pipeline route approved by FERC. Therefore, the proposed taking is void for vagueness and the Complaint should be dismissed.

15.     Plaintiff has failed to take into account the effect that its proposed Project will have on historic properties, in violation of Section 106 of the National Historic Preservation Act, 54 U.S.C. §306108 and Section 4(f) of the U.S. Department of Transportation Act, 49 U.S.C. §303.

16.     Plaintiff has failed to comply with at least the following requirements to move forward with its Project:

    a.     Plaintiff has failed to comply with the requirements of 42 U.S.C. §4651.

    b.     Plaintiff has failed to obtain—and, thus, has failed to provide Landowners with—any appraisals relating to its proposed acquisition of property rights from Landowners.

    c.     Plaintiff has failed to engage in good-faith negotiations with Landowners before initiating this matter.

      d.     Plaintiff has failed to comply with the requirements of the Uniform Relocation Assistance Act, 42 U.S. C §§4621-4638.

      e.     Plaintiff has not provided for any relocation assistance to the Defendant as a result of its proposed Project.

17.     Plaintiff's motion for FRCP Rule 65 partial summary judgment on immediate access and entry prior to the determination of just compensation raises a multitude of factual issues upon which Landowners should be allowed the right to take discovery under Rule 56(d)(2).

18.     Landowners reserve the right to raise any grounds of defense which may become apparent in the discovery process or by later actions of Plaintiff in this matter.

### OBJECTIONS TO REQUESTED RELIEF

1.     Landowners object to a judgment condemning the property interests set forth in the Complaint and, in support thereof, incorporate each ground asserted in Paragraphs 1-18 of their Grounds of Defense above.

2.     Landowners object to an order confirming MVP's authority to exercise eminent domain and, in support thereof, incorporate each ground asserted in Paragraphs 1-18 of their Grounds of Defense above.

3.     Landowners object to an order awarding MVP immediate possession of access to the property interests subject to this action and, in support thereof, incorporate each ground asserted in Paragraphs 1-18 of their Grounds of Defense above. Landowners further object to an order awarding MVP immediate possession of access to the property interests subject to this action because just compensation has not yet been determined or paid to Landowners. This premature attempt to obtain access

violates, among other law, the Takings Clause, Due Process Clause, and separation-of-powers provisions of the United States Constitution as well as the Natural Gas Act, which does not provide for quick-take proceedings.

4.      Landowners object to a judgment vesting title in the Easements to MVP, and, in support thereof, incorporate each ground asserted in Paragraphs 1-18 of their Grounds of Defense above.[16]

5.      Landowners object to MVP's being granted any other or further relief in this Court, whether in law or equity, and, in support thereof, incorporate each ground asserted in Paragraphs 1-18 of their Grounds of Defense above.

6.      Landowners reserve the right to supplement these objections and to further object as to any other relief sought by MVP.

### AFFIRMATIVE DEFENSES

1.      Landowners incorporate their Motion to Dismiss in Part I as if fully set forth herein verbatim.

2.      Landowners request that, if the Court does render a judgment or decree, the Court only allow a taking of the quality and quantity of estate necessary to accomplish the public purpose set forth in the Complaint with respect to the rights sought by MVP. To this end, Landowners request additional opportunity for discovery before any adjudication of their property rights and/or MVP's right to take their property.

---

[16] Landowners object to the application of the federal standard of "just compensation" in the Fifth Amendment to the United States Constitution for a taking by a private natural gas transmission company pursuant to Federal Rule of Civil Procedure 71.1. MVP is not the federal government, but is instead a private natural gas transmission company. As such, because the Court is to apply the substantive law of the state containing the property taken, the Landowners are entitled to application of the state standard of "just compensation" pursuant to the West Virginia Constitution. *See* 15 U.S.C. §717f(h).

### DEMAND FOR JUST COMPENSATION AND STATE PROCEDURAL PROTECTIONS

Because MVP is a private natural-gas transmission company, "the practice and procedure in [this action] . . .  shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." 15 U.S.C. §717f(h). Accordingly, Landowners are entitled to application of the state standard of "just compensation" pursuant to Article III, Section 9 of the West Virginia Constitution and to the procedural protections laid out in Chapter 54 of the West Virginia Code.

### DEMAND FOR JURY TRIAL

1.      Pursuant to Federal Rule of Civil Procedure 71.1(h)(1)(B), Landowners respectfully demand a separate jury trial on all issues.

2.      Landowners respectfully ask the Court to empanel a jury pursuant to state substantive law.

WHEREFORE, Landowners pray this Court dismiss this case for lack of subject-matter jurisdiction. If the Court does not dismiss this case for lack of jurisdiction, then Landowners request full and just compensation and each demand a separate jury trial on all issues of compensation. Landowners seek awards of compensation for the value of their property taken and all damages to their remaining property as allowed under the applicable law. Landowners seek all such other and further relief, in law or equity, as is appropriate and allowed by law.

///

Respectfully submitted,


  /s/ Isak Howell
Isak Howell (W. Va. Bar No. 11558)
119 Norfolk Ave. SW #330
Roanoke, VA 24011
Phone: (540) 998-7744
Email: isak@howell-lawoffice.com

*Counsel for Orus Ashby Berkley, Reinhard Bouman, Ashofteh Bouman, Tammy A. Capaldo, Charles F. Chong, Rebecca Ann Eneix-Chong, Gerald Wayne Corder, Randall N. Corder, Hilry Gordon, Robert M. Jarrell, William Gregory Lloyd, Jeffrey Dewayne Osborne, Kiranasa Swami, Ronald Tobey, Elizabeth Tobey, Brian Van Nostrand, Helen Montague Van Nostrand, and Allan Walter Lehr*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:17-cv-4214 |
| | ) |
| AN EASEMENT TO CONSTRUCT, | ) |
| OPERATE AND MAINTAIN A 42-INCH | ) |
| GAS TRANSMISSION LINE ACROSS | ) |
| PROPERTIES IN THE COUNTIES OF | ) |
| NICHOLAS, GREENBRIER, MONROE, | ) |
| SUMMERS, BRAXTON, HARRISON, | ) |
| LEWIS, WEBSTER, AND WETZEL, WEST | ) |
| VIRGINIA, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## Certificate of Service

I hereby certify that, on December 4, 2017, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of such

filing to the following counsel of record:

Nicolle S. Bagnell
Lucas Liben
REED SMITH
Suite 1200
225 Fifth Avenue
Pittsburgh, PA 15222
nbagnell@reedsmith.com
lliben@reedsmith.com
*Counsel for Plaintiff*

/s/ Isak Howell

Isak Howell (W. Va. Bar No. 11558)
119 Norfolk Ave. SW #330
Roanoke, VA 24011
Phone: (540) 998-7744
Email:  isak@howell-lawoffice.com

*Counsel for Orus Ashby Berkley, Reinhard Bouman, Ashofteh Bouman, Tammy A. Capaldo, Charles F. Chong, Rebecca Ann Eneix-Chong, Gerald Wayne Corder, Randall N. Corder, Hilry Gordon, Robert M. Jarrell, William Gregory Lloyd, Jeffrey Dewayne Osborne, Kiranasa Swami, Ronald Tobey, Elizabeth Tobey, Brian Van Nostrand, Helen Montague Van Nostrand, and Allan Walter Lehr*