UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MOUNTAIN VALLEY PIPELINE, LLC,

       Plaintiff,

v.                       Civil Action No. 2:17-cv-04214

AN EASEMENT TO CONSTRUCT,
OPERATE AND MAINTAIN A 42-INCH
GAS TRANSMISSION LINE ACROSS
PROPERTIES IN THE COUNTIES OF
NICHOLAS, GREENBRIER, MONROE,
and SUMMERS, WEST VIRGINIA, et
al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff Mountain Valley Pipeline, LLC's ("Mountain Valley") motion for partial summary judgment and immediate access to and possession of the easements condemned, (ECF #6), filed October 27, 2017.  Also pending are three motions to dismiss, three motions to strike, and one motion to stay, each of which also will be discussed herein.

### I. Background

#### A. Legal Framework

The Natural Gas Act ("NGA"), 15 U.S.C. § 717 et seq., outlines the power to regulate and approve new pipeline

construction projects.  At the outset, construction of a new

pipeline cannot commence until a gas company obtains from the

Federal Energy and Regulatory Commission ("FERC") a certificate

of public convenience and necessity (a "certificate").  15

U.S.C. § 717f(c)(1)(A).  FERC may issue a certificate

> authorizing the whole or any part of the operation . .
> . if it is found that the applicant is able and
> willing properly to do the acts and to perform the
> service proposed and to conform to the provisions of
> [the NGA] and the requirements, rules, and regulations
> of [FERC] thereunder, and that the proposed service,
> sale, operation, construction, extension, or
> acquisition, to the extent authorized by the
> certificate, is or will be required by the present or
> future public convenience and necessity.

Id. § 717f(e).  FERC also "[has] the power to attach to the

issuance of the certificate and to the exercise of the rights

granted thereunder such reasonable terms and conditions as the

public convenience and necessity may require."  Id.

Once FERC issues a certificate, the certificate holder

has the power of eminent domain over properties that are

necessary to complete an approved project and that the holder

has been unable to acquire by agreement.  See id. § 717f(h).

The NGA mandates that condemnation proceedings "shall conform as

nearly as may be with the practice and procedure in similar

action or proceeding in the courts of the State where the

property is situated."  Id.  The United States Court of Appeals

for the Fourth Circuit holds "that this state procedure

requirement has been superseded by [Federal Rule of Civil Procedure 71.1]." E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 822 (4th Cir. 2004).

The Fourth Circuit's opinion in East Tennessee Natural Gas Co. v. Sage dictates the progression of condemnation and immediate possession actions under the NGA. In Sage, the Fourth Circuit approached the following question: "[W]hether a court may use its equitable powers to grant a preliminary injunction allowing immediate possession" in an NGA condemnation action even though the NGA "is silent on the issue of immediate possession." Id. at 823. The court answered in the affirmative and explained that

> once a district court determines that a gas company
> has the substantive right to condemn property under
> the NGA, the court may exercise equitable power to
> grant the remedy of immediate possession through the
> issuance of a preliminary injunction.

Id. at 828.

B. Factual and Procedural Background

FERC issued Mountain Valley's certificate on October 13, 2017, authorizing construction of a 303.5-mile long natural gas pipeline of 42-inches in diameter. (See Compl. Ex. B, ¶¶ 7, 310(A).) The pipeline originates in Wetzel County, West Virginia, and terminates in Pittsylvania County, Virginia. (Id.

¶ 7.)  In the Southern District of West Virginia, the pipeline

traverses properties in Nicholas, Greenbrier, Summers, and

Monroe Counties and specifies a compressor station in Fayette

County.  The certificate requires Mountain Valley to satisfy a

variety of conditions, including a three-year construction and

in-service deadline and a number of environmental prerequisites

to be met before and during construction.  (See id. ¶ 310(C)(1),

App. C.)

   The easements sought by Mountain Valley are a

necessary predicate to building the pipeline.  (Declaration of

Robert J. Cooper on Access for Construction ("Cooper

Construction Decl.") ¶ 10.)  Although Mountain Valley obtained

some of the necessary easements by agreement prior to filing

this action, it failed to acquire many in the four-county region

noted above despite offering at least $3,000 for each one.  (Id.

¶¶ 7-8.)  Thus, Mountain Valley initiated this action in this

court on October 24, 2017, pursuant to the NGA and Federal Rule

of Civil Procedure 71.1.

   Soon thereafter, on October 27, 2017, Mountain Valley

filed three motions: Motion for Partial Summary Judgment and

Immediate Access to Survey the Easements Condemned (ECF #4);

Motion for Partial Summary Judgment and Immediate Access to and

Possession of the Easements Condemned for Construction of MVP

Project (ECF #6); and Motion for Expedited Hearing on Motions for Partial Summary Judgment and Immediate Access to and Possession of the Easements Condemned (ECF #8).  The court permitted limited discovery until January 12, 2018, and set a briefing schedule for the surveying and construction motions. (ECF #143.)  On January 12, 2018, the court granted Mountain Valley's request for immediate access to survey "to the extent that it [sought] access to the properties . . . that ha[d] not already been surveyed by agreement of the parties, and for the limited purposes" of staking environmental and cultural resources.  (ECF #186, at 2.)  On January 24, 2018, briefing concluded on the pending motion, wherein Mountain Valley requests partial summary judgment of its power of eminent domain and a preliminary injunction granting it immediate possession of the condemned properties for construction activities.  The court held a preliminary injunction hearing on February 7, 2018.  The issues are now ripe for disposition.

II. Motions to Dismiss, Strike, and Stay

Before addressing the motion for partial summary judgment and preliminary injunction, the court must first address the various parties' motions to dismiss, strike, and

stay.[1]  The landowners[2] have filed three motions to dismiss, (ECF #78, 120, 203), and Mountain Valley has moved to strike each one, (ECF #116, 157, 212).  Mountain Valley aptly points out that the motions to dismiss should be denied because Rule 71.1 does not permit such motions in condemnation actions.  (See, e.g., ECF #117, at 1-2.)

Rule 71.1 expressly states that, other than an answer, "[n]o other pleading or motion asserting an additional objection or defense is allowed."  Fed. R. Civ. P. 71.1(e)(3).  The Advisory Committee Notes explain that subdivision (e) "[d]epart[s] from the scheme of Rule 12, . . . requir[ing] all defenses and objections to be presented in an answer."  Fed. R. Civ. P. 71.1(e) advisory committee notes.  The notes continue that subdivision (e) "does not authorize a preliminary motion," of which "[t]here is little need . . . in condemnation

---

[1] Additionally, Warrior Energy Resources, LLC, ("Warrior") moved to intervene on December 22, 2017.  At the February 7 hearing, counsel for Warrior represented to the court that it was close to a settlement agreement with Mountain Valley and requested that its motion be held in abeyance for the time being.  Additionally, at that time, Warrior withdrew its objections to Mountain Valley's motion for partial summary judgment and preliminary injunction.

[2] As it is used here and throughout this memorandum opinion and order, "landowners" refers to one or more of the defendant-landowners in this action.  Because the landowners often make overlapping arguments, and because there are a great number of landowners, specific reference to each landowner would needlessly confound the analysis.

proceedings." Id. Correspondingly, the Fourth Circuit
unequivocally holds that, under Rule 71.1, "no other pleading
besides the answer is contemplated." Wash. Metro. Area Transit
Auth. v. Precision Small Engines, 227 F.3d 224, 228 n.2 (4th
Cir. 2000); accord Atlantic Seaboard Corp. v. Van Sterkenburg,
318 F.2d 455, 458 (4th Cir. 1963) ("[Rule 71.1's] prohibition of
any pleading other than an answer is clear and unequivocal. The
preliminary motions tendered here were unallowable.").
Accordingly, Mountain Valley's motions to strike are granted,
and the motions to dismiss are denied as stricken.

        Next, the landowners filed a motion for stay of
proceedings. Again, Mountain Valley correctly notes that the
NGA delineates when and how a certificate may be stayed. (See
ECF #160, at 2-7.) The NGA directs that

> [t]he filing of an application for rehearing . . .
> shall not, unless specifically ordered by [FERC],
> operate as a stay of [FERC's] order. The commencement
> of [appellate] proceedings [in the courts of appeal]
> shall not, unless specifically ordered by the court,
> operate as a stay of [FERC's] order.

15 U.S.C. § 717r(c). Thus, the court lacks discretion to order
a stay of Mountain Valley's certificate. Accord, e.g., Tenn.
Gas Pipeline Co. v. Mass. Bay Transp. Auth., 2 F. Supp. 2d 106,
109 (D. Mass. 1998) ("The NGA itself directs that an order by
FERC not be stayed unless either FERC itself — in the context of

a rehearing — or the reviewing Court of Appeals specifically orders a stay.").

Even so, the landowners argue that the court retains the equitable power to stay "proceedings on [Mountain Valley's] equitable motion for preliminary injunction until FERC concludes its 'further consideration' of Landowners' request for rehearing." (ECF #169, at 4.) Fundamentally, the landowners ask the court to deny Mountain Valley's motion for preliminary injunction – time-sensitive by its very nature – under the guise of a stay based on the alleged irreparable harms that they may face if Mountain Valley is granted immediate possession of the easements. Assuming that the court has such authority, which it does not pursuant to the NGA, the court cannot grant the relief requested. The Supreme Court instructs that four factors are to be considered in a preliminary injunction analysis, while the landowners implore the court for an effective denial of Mountain Valley's motion based upon only one – balance of the equities. See Winter v. Nat. Res. Defense Council, Inc., 555 U.S. 7, 20, 25-26 (2008). The motion for stay of proceedings is denied.

III. Motion for Partial Summary Judgment of Power of Eminent
Domain Under the NGA


A. Governing Standard


Pursuant to Federal Rule of Civil Procedure 56(b), "a

party may file a motion for summary judgment at any time until

30 days after the close of all discovery."  Summary judgment is

appropriate only "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).


"As to materiality, . . . [o]nly disputes over facts

that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be

counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986) (citing 10A Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 2725 (2nd ed. 1983)).


Regarding genuineness, "summary judgment will not lie

if the dispute about a material fact is 'genuine,' that is, if

the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  Id.  The moving party has the

initial burden of "'showing' - that is, pointing out to the

district court - that there is an absence of evidence to support

the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986); <u>see</u> <u>also</u> <u>Dash v. Mayweather</u>, 731 F.3d 303, 311 (4th Cir. 2013). If the movant carries its burden, the non-movant must demonstrate that "there is sufficient evidence favoring [it] for a jury to return a verdict" in its favor. <u>Anderson</u>, 477 U.S. at 249 (citation omitted); <u>see</u> <u>also</u> <u>Dash</u>, 731 F.3d at 311. "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." <u>Dash</u>, 731 F.3d at 311 (citing <u>Anderson</u>, 477 U.S. at 252, and <u>Stone v. Liberty Mut.</u> <u>Ins. Co.</u>, 105 F.3d 188, 191 (4th Cir. 1997)).

B. Discussion

Mountain Valley moves the court for entry of partial summary judgment that it has the power of eminent domain under the NGA. The NGA confers the power of eminent domain when (1) the condemnor has a certificate authorizing construction of a project; (2) the property interests to be condemned are necessary to complete the project; and (3) the condemnor has been unable to acquire the necessary property interests by agreement. <u>See</u> <u>id.</u> § 717f(h). Mountain Valley argues that the

undisputed facts demonstrate its satisfaction of all three elements.[3]  (See generally ECF #7.)  The court agrees.

The defendants mount a variety of attacks against Mountain Valley's condemnation authority.  First, however, the court must determine whether it has the power to hear these challenges.  The NGA defines the power of review over FERC orders.  It sets forth a procedure that begins with FERC, then the courts of appeals, and lastly the Supreme Court.  See 15 U.S.C. § 717r(a), (b).  Accordingly, the Fourth Circuit holds that

> 15 U.S.C. § 717r(b)[] vests exclusive jurisdiction to
> review all decisions of [FERC] in the circuit court of
> appeals; there is no area of review, whether relating

---

[3] There is an additional prong to whether the court can entertain Mountain Valley's condemnation action.  The NGA states "[t]hat the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000."  Id.  Mr. Cooper swears that each landowner was offered at least $3,000 for the associated easement, (Cooper Construction Decl. ¶ 8), which the court presumes to be a sum in excess of $3,000 for each property.  The courts appear to agree that an offer exceeding $3,000 satisfies the NGA's jurisdictional test.  See ANR Pipeline Co. v. 62.026 Acres of Land, 389 F.3d 716, 717-19 (7th Cir. 2004) (finding that the landowners "claimed" in excess of $3,000 when they turned down an offer of $4,872 in an effort to proceed in state court); Dominion Energy Carolina Gas Transmission, LLC v. 1.169 Acres, 3:16-cv-01974-JMC, 2018 WL 330012, at *2 (D.S.C. Jan. 8, 2018) (finding the jurisdiction amount satisfied where the condemnor stipulated that the property values exceeded $3,000); In re Algonquin Nat. Gas Pipeline Eminent Domain Cases, No. 15-cv-5988, 2015 WL 10793423, at *5, 10 (S.D.N.Y. Sept. 18, 2015) (finding the jurisdictional amount satisfied when the offer exceeded $3,000 even though the condemnor's appraiser valued the land at less than $3,000).

> to final or preliminary orders, available in the
> district court.  And this has been the uniform
> construction given the statute.

Consolidated Gas Supply Corp. v. FERC, 611 F.2d 951, 957 (4th

Cir. 1979) (citations omitted).  In other words, the NGA's

review provision extends to "all issues inhering in the

controversy, and all other modes of judicial review;" "all

objections to the [certificate] . . . must be made in the Court

of Appeals or not at all."  City of Tacoma v. Taxpayers of

Tacoma, 357 U.S. 320, 335-36 (1958) (parsing a judicial review

section that is virtually identical to the NGA's); see also

Williams Nat. Gas Co. v. City of Oklahoma City, 890 F.2d 255,

262 (10th Cir. 1989) ("We would be hard pressed to formulate a

doctrine with a more expansive scope.").

It follows, then, that this court does not have

jurisdiction to hear any of the landowners' challenges that

would require the court to undertake review of the certificate

or that which FERC is authorized to consider thereunder.[4]  See

---

[4] Furthermore, even if one of the challenges brought by the
defendants falls outside the NGA's review provision, the Western
District of Virginia recently held that a district court "would
still lack jurisdiction over [challenges to a certificate] based
on an application of the so-called Thunder Basin framework."
Berkley v. Mountain Valley Pipeline, LLC, No. 7:17-cv-00357,
2017 WL 6327829, at *5 (W.D. Va. Dec. 11, 2017) (Dillon, J.).
Thunder Basin recognizes that "Congress can also impliedly
preclude jurisdiction by creating a statutory scheme of
administrative adjudication and delayed judicial review in a
particular court" – in this case, the courts of appeals.

Williams Nat. Gas Co., 890 F.2d at 262 ("Thus, a challenger may not collaterally attack the validity of a prior FERC order in a subsequent proceeding.").  One district court has described its limited review authority as "determining whether (1) the certificate of public convenience and necessity is 'facially valid'; and (2) the property sought to be condemned is within the scope of the certificate" – in other words, ensuring that the certificate holder is not committing a fraud on the court and the condemnees.  Alliance Pipeline v. 4.500 Acres of Land, 911 F. Supp. 2d 805, 813 (D.N.D. 2012) (citations omitted).

Many of the landowners' challenges to Mountain Valley's condemnation authority are improper in this court. Those challenges can be summarized as follows: FERC has erroneously interpreted its congressional authority to condition certificates, (ECF #202, at 3 n.4); there is not yet a "public necessity" for the taking as required by the Fifth Amendment because Mountain Valley has not satisfied all of the conditions precedent to construction, and Mountain Valley thus lacks the substantive power of eminent domain, (ECF #155, at 4-5; ECF #196, at 5; ECF #202, at 1-5; ECF #206, at 2-4); if Mountain Valley lacks the power of eminent domain, it cannot show that

Bennett v. SEC, 844 F.3d 174, 178 (4th Cir. 2016) (citing Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207 (1994)).

the landowners' property interests are necessary, (ECF #155, at 5); and Mountain Valley has not proven that it can pay just compensation as required by the Fifth Amendment, (ECF #202, at 5-7).

Congress has forbidden the district courts from considering any of these arguments because each would require review of FERC's order. See Consolidated Gas Supply Corp., 611 F.2d at 957. Indeed, Mountain Valley cites a series of district court opinions reinforcing that point, (see ECF #208, at 4-7, 13-16, 19-20 (citing cases)), and the court has not found any opinions holding otherwise. Although the landowners bring some debate as to the scope of matters under FERC's purview, the range of FERC's authority is exceptionally broad: it is comprehensive of "all factors bearing on the public interest" as they pertain to the regulation of natural gas projects. Atlantic Refining Co. v. Pub. Serv. Comm'n of N.Y., 360 U.S. 378, 391 (1959); accord 15 U.S.C. § 717(a) ("[I]t is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest."). Accordingly, the aforementioned arguments are improper here.

The remainder of the landowners' assertions are also readily discarded. The landowners insist that the various challenges that Mountain Valley faces before FERC and the courts of appeals counsel against the granting of partial summary judgment. (ECF #206, at 3-4.) As explained earlier, a FERC order remains in effect unless FERC or a court of appeals issues a stay, see 15 U.S.C. § 717r(c), and no such stay has been issued here.

The landowners contend that Mountain Valley did not negotiate the purchase of their property interests in good faith, and that there should be a good-faith negotiation requirement under the NGA before the grant of condemnation authority. (ECF #155, at 6; ECF #205, at 10-12, 14-16.) The landowners cite two out-of-circuit district court opinions for the proposition that the NGA requires condemnors to negotiate in good faith. See Humphries v. Williams Nat. Gas Co., 48 F. Supp. 2d 1276, 1280 (D. Kan. 1999) ("The court does not believe that [the condemnor's] post-entry offer to compensate [the condemnee] complies with either the letter or spirit of § 717f(h)) . . . ."); Transcon. Gas Pipe Line Corp. v. 118 Acres of Land, 745 F. Supp. 366, 369 (E.D. La. 1990) (stating that Louisiana law requires a condemnor to negotiate in good faith). Mountain Valley, on the other hand, references overwhelming authority –

including many opinions from district courts in the Fourth
Circuit – that the NGA does not contain a good-faith negotiation
requirement.  (See ECF #208, at 9-11 (citing inter alia, Hardy
Storage Co. v. Property Interests Necessary to Conduct Gas
Storage Operations, No. 2:07CV5, 2009 WL 689054, at *5 (N.D. W.
Va. Mar. 9, 2009); Columbia Gas Transmission Corp. v. An
Easement to Construct, Operate and Maintain a 24-Inch Pipeline,
No. 5:07cv04009, 2008 WL 2439889, at *2 n.4 (W.D. Va. June 9,
2008)).)  These opinions comport with the language of the NGA
and Rule 71.1, which make no reference to good faith.  See 15
U.S.C. § 717f(h); Fed. R. Civ. P. 71.1.  Mountain Valley made
offers to purchase the necessary easements from the defendants,
and whether those offers were in good faith is of little moment
inasmuch as a fair and reasonable award can be adjudicated.  But
see Transwestern Pipeline Co. v. 17.19 Acres of Property Located
in Maricopa Cty., 550 F.3d 770, 776 (9th Cir. 2008) (requiring
the condemnor under the NGA to "establish that it engaged in
good faith negotiations with the landowner" (citation omitted)).

          Last, the landowners assert that partial summary
judgment should be denied because Mountain Valley has not yet
posted a sufficient cash deposit to ensure just compensation.
(ECF #205, at 12.)  This assertion is premature inasmuch as the
posting of assurance is a prerequisite to possession, not

recognition of the power of eminent domain under the NGA.  See

Sage, 361 F.3d at 824 (citing Cherokee Nation v. S. Kan. Ry.

Co., 135 U.S. 641, 659 (1890)).  Accordingly, the landowners'

remaining arguments are without merit.[5]

It is undisputed (1) that Mountain Valley holds a

certificate, (2) that the property interests Mountain Valley

seeks to condemn are necessary for its FERC-approved project,

and (3) that Mountain Valley has unsuccessfully negotiated the

purchase of those property interests with the landowners.

Partial summary judgment of Mountain Valley's power of eminent

domain as conferred by the NGA is granted.

IV. Preliminary Injunction Granting Immediate Possession

A. Separation of Powers and the Court's Inherent Equitable
Power

The landowners argue that an award of immediate

possession violates separation of powers principles.  (ECF #155,

---

[5] One additional argument bears mentioning here.  Landowner
Mountain Lair, LLC, ("Mountain Lair") claimed that Mountain
Valley represented to it that the pipeline could not be built
along the approved easement route across its property.  (ECF
#206, at 4-5.)  Mountain Valley replied that it intends to build
the pipeline on the approved route.  (ECF #208, at 8.)  At the
February 7 hearing, both parties confirmed Mountain Valley's
position, and Mountain Lair withdrew its argument on this point.

at 10-14; ECF #202, at 8; ECF #206, at 5-15.)  In short, the
landowners' argument proceeds that immediate possession in a
condemnation action is essentially a quick take, 40 U.S.C. §
3114; the NGA does not authorize gas companies to condemn
property via quick take, see generally 15 U.S.C. § 717 et seq.;
thus, judicial authorization of a quick take under the NGA
violates separation of powers principles because doing so
assumes the powers of the legislature.  The defendants heavily
rely upon the Seventh Circuit's opinion in Northern Border
Pipeline Co. v. 86.72 Acres of Land, 144 F.3d 469 (7th Cir.
1998), insisting that the Seventh Circuit denied immediate
possession because Congress did not make quick take power
available under the NGA.

        Alternatively, the defendants argue that this court
should not needlessly exercise its inherent equitable powers to
authorize immediate possession where an adequate remedy at law
already exists under the NGA – normal condemnation proceedings.
(ECF #206, at 18-19.)  The defendants look for support in
Transwestern Pipeline Co. v. 9.32 Acres, More or Less, of
Permanent Easement Located in Maricopa County, 550 F.3d 770 (D.
Ariz. 2008), aff'd sub nom., Transwestern Pipeline Co. v. 17.19
Acres, 550 F.3d 770.

Furthermore, the defendants insist that while Sage authorizes immediate possession where condemnation authority has been entered by a court, Sage did not consider a separation of powers argument. (ECF #206, at 9-10.) As a result, the defendants ask the court to discard Sage in the separations of powers analysis.

As an initial matter, the landowners' reading of Northern Border and the district court opinion in Transwestern Pipeline is dubious. First, the corresponding appellate opinion for Transwestern Pipeline casts a stark shadow over the landowners' separation-of-powers and inherent-equitable-power arguments. There, the Ninth Circuit concluded

> that the substantive right to condemn under § 717f(h) of the NGA ripens only upon the issuance of an order of condemnation. At that point, the district court may use its equitable powers to grant possession to the holder of a . . . certificate if the gas company is able to meet the standard for issuing a preliminary injunction.

550 F.3d at 778. In other words, if a certificate holder obtains summary judgment of its power of eminent domain – Mountain Valley has received such relief herein – then the holder is entitled to a preliminary injunction granting it immediate possession, provided it could satisfy the preliminary injunction factors and ensure just compensation. Additionally, the Ninth Circuit recognized that district courts in the Seventh

Circuit have read Northern Border to allow a "grant[ of]
possession to gas companies only following judgments of
condemnation." Id. at 777. Accordingly, the cases upon which
the landowners rely hardly provide them any support.

Moreover, the Fourth Circuit has already spoken on
separation of powers in the context of immediate possession and
the NGA. In Columbia Gas Transmission, LLC v. 76 Acres, More or
Less, in Baltimore and Harford Counties, the Fourth Circuit
stated the following:

> The Landowners argue that Sage is distinguishable
> because it did not mention the words "separation of
> powers." However, we stated that "the Constitution
> does not prevent a condemnor from taking possession of
> property before just compensation is determined and
> paid." Sage, 361 F.3d at 824. In addition, we
> rejected the Sage landowners' argument "that only
> Congress can grant the right of immediate possession."
> Id. Because we are bound to follow this Court's
> published opinions, Stahle v. CTS Corp., 817 F.3d 96,
> 100 (4th Cir. 2016), Sage would require us to reject
> the Landowners' claim . . . .

701 F. App'x 221, 231 n.7 (4th Cir. 2017). Columbia Gas
Transmission v. 76 Acres, while unpublished, is highly
persuasive since it directly addresses the argument made by the
defendants here: Sage is binding, and it does not violate
separation of powers. Accord Columbia Gas Transmission, LLC v.
252.071 Acres, More or Less, in Baltimore Cty., No. ELH-15-3462,
2016 WL 1248670, at *10-12 (D. Md. Mar. 25, 2016). Thus,
consideration of Mountain Valley's request for immediate

20

possession by way of a preliminary injunction does not violate separation of powers principles, nor does it run awry of the court's inherent equitable powers.

B. Governing Standard

"A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants[,] . . . on a temporary basis, the relief that can be granted permanently after trial[.]" The Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 345 (4th Cir. 2009), vacated on other grounds, Citizens United v. FEC, 558 U.S. 310 (2010), aff'd, 607 F.3d 355 (4th Cir. 2010) (per curiam). The party seeking the preliminary injunction must

> demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest.

Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013) (citing Winter v. Nat. Res. Defense Council, Inc., 555 U.S. 7, 20 (2008)). All four elements must be established by "a clear showing" before the injunction will issue. Real Truth About Obama, 575 F.3d at 347. Further, "[m]andatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of

the situation demand such relief." Sage, 361 F.3d at 828

(quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980),

and citing In re Microsoft Corp. Antitrust Litig., 333 F.3d 517,

525 (4th Cir. 2003), abrogated on other grounds, eBay Inc. v.

MercExchange, LLC, 547 U.S. 388 (2006)) (alteration in

original).

C. Discussion

The court finds it pertinent to note, at the outset of

this discussion, that the two other district courts presiding

over Mountain Valley's companion condemnation actions have

already granted Mountain Valley's request for a preliminary

injunction under virtually identical circumstances. See

Mountain Valley Pipeline, LLC v. Simmons, No. 1:17CV211, 2018 WL

701297, at *12-19 (N.D. W. Va. Feb. 2, 2018) (Keeley, J.);

Mountain Valley Pipeline, LLC v. Easements to Construct, Operate

and Maintain a Nat. Gas Pipeline Over Tracts of Land in Giles

Cty., No. 7:17-cv-00492, 2018 WL 648376, at *12-19 (W.D. Va.

Jan. 31, 2018) (Dillon, J.).  The court's search of the NGA case

law suggests that the district courts accord with that result.

See, e.g., Dominion Carolina Gas Transmission, LLC v. 1.169

Acres, in Richland Cty., 218 F. Supp. 3d 476 (D.S.C. 2016);

Rover Pipeline, LLC v. Rover Tract No(s) WV-DO-SHB-011.510-ROW-

T, No. 1:17CV18, 2017 WL 5589163 (N.D. W. Va. Mar. 7, 2017)
(Keeley, J.); Columbia Gas Transmission, LLC v. 252.071 Acres,
More or Less, in Baltimore Cty., No. ELH-15-3462, 2016 WL
1248670 (D. Md. Mar. 25, 2016); Columbia Gas Transmission, LLC
v. 0.85 Acres, More or Less, in Harford Cty., No. WDQ-14-2288,
2014 WL 4471541 (D. Md. Sept. 8, 2014); Transcon. Gas Pipe Line
Co. v. Permanent Easement Totaling 2.322 Acres, No. 3:14-cv-
00400-HEH, 2014 WL 4365476 (E.D. Va. Sept. 2, 2014); Columbia
Gas Transmission, LLC v. 76 Acres More or Less, in Baltimore and
Harford Counties, No. ELH-14-0110, 2014 WL 2960836 (D. Md. June
27, 2014), aff'd, vacated in part on other grounds, remanded,
701 F. App'x 221 (4th Cir. 2017).

        The court recognizes the paradox that the NGA
presents, that relief as extraordinary as a preliminary
injunction is granted so ordinarily.  Indeed, the court
questions the providence of a statutory and regulatory system
that scrutinizes litigants with such rigor and precision over
the course of years, before passing them to the district courts
in a race against the clock – Mountain Valley's certificate
expires in three years, and the FERC approval process evidently
encourages, if not requires, applicants to prove a market by
entering into shipping agreements prior to certificate issuance
– to obtain relief that is supposed to be rarely granted.

As far as the court can tell, however, the circumstances presented by an NGA condemnation and immediate possession action appear to be nearly uniform. Such uniformity is doubtlessly the designed product of the practicalities of constructing a natural gas pipeline combined with the finely-wrought procedures before FERC. Perhaps, then, it makes sense that the results would also be the same. And based on the record here, there are no unique circumstances that would place Mountain Valley outside the ambit of those cases. Thus, for reasons stated below, the court finds that Mountain Valley has successfully demonstrated the four preliminary injunction elements, and Mountain Valley's motion for a preliminary injunction granting it immediate possession of the landowners' property interests is granted.

First, the court has already determined on the merits that Mountain Valley has the right to condemn the landowners' property interests. "Success on the merits for [Mountain Valley] is therefore apparent." Sage, 361 F.3d at 830.[6]

---

[6] The landowners argue that Sage is of lesser import here because it was decided under the Blackwelder standard for preliminary injunctive relief, which was abrogated by Winter. (ECF #202, at 12-14; ECF #206, at 15-16.) Under the Blackwelder standard, preliminary injunction requests were evaluated according to the "balance-of-the-hardship test," whereby a movant faced a generally more lenient standard for obtaining relief. See Real Truth About Obama, 575 F.3d at 346-47. As written, however,

Second, Mountain Valley must clearly demonstrate that it is likely to suffer irreparable harm absent relief. Robert J. Cooper, Mountain Valley's Senior Vice President of Engineering and Construction and "company-wide leader for the [pipeline] project," described Mountain Valley's irreparable harm as follows:

> 12. [Mountain Valley] needs access to the permanent and exclusive rights-of-way, access road rights-of-way, temporary construction rights-of-way, and temporary workspace rights-of-way across the Landowners' properties by February 1, 2018 to begin construction activities in order to safely and effectively accomplish the [project] on schedule.
>
> 13. [Mountain Valley] plans to construct the pipeline and place it into service by December 2018.
>
> . . .
>
> 24. If [Mountain Valley] is unable to begin the tree clearing and construction activities of the [project] on the Landowners' properties by February 1, 2018, it will be unable to complete the work according to its construction schedule, and it will incur additional delay fees and contractor costs.
>
> 25. [Mountain Valley] has contractual requirements to begin clearing activities in February 2018. [Mountain Valley] also must comply with administrative agency regulations of the United States Fish and Wildlife Service requiring that certain clearing be complete by March 31, 2018, and that construction of roads be

---

Sage suggests that it would pass muster under the Winter standard, although that cannot be said with certainty. Nevertheless, the post-Winter district courts in the Fourth Circuit, cited supra, continue to treat Sage as at least highly persuasive, if not dispositive, and the outcomes in those cases mirror Sage as well. In any event, the court has read and applied Sage here in light of the proper standard for preliminary injunctive relief.

complete by March 31, 2018. If construction is delayed, [Mountain Valley] will be unable to comply with those contractual requirements, and agency approvals and permits, and may be subject to fines and will incur damages.

26. [Mountain Valley] also has agreements in place to begin shipping gas in 2018.

. . .

28. Delaying the [project] will unnecessarily postpone the public benefits that the pipeline will provide and unnecessarily increase the costs of completing the work and result in the loss of substantial revenue to [Mountain Valley].

(Cooper Construction Decl. ¶¶ 3, 12-13, 24-26, 28.) Mr. Cooper reiterated the effect of these statements at the February 7 hearing. Additionally, Mr. Cooper added that Mountain Valley will suffer non-economic harms absent relief, such as harm to its business reputation and goodwill.

Mr. Cooper claimed that Mountain Valley required possession of the landowners' property interests by February 1, 2018. (Id. ¶¶ 12, 24.) Obviously, that date has passed. At the February 7 hearing, Mr. Cooper explained that the passage of February 1 does not negate Mountain Valley's need for relief. Rather, it results in the accrual of extra costs that vary depending on when access is granted.

Generally, the landowners contend that possession is not a limiting factor to Mountain Valley's progress since it faces legal challenges in other forums and still must satisfy

all of the conditions precedent to construction in its certificate, (ECF #155, at 6-7; ECF #196, at 8; ECF #200, at 2-3; ECF #202, at 24-25; ECF #205, at 9-10; ECF #206, at 3-4); that Mountain Valley can build the pipeline in under a year but has three years from the date of certificate issuance to complete the pipeline, and Mountain Valley has considered alternative construction schedules with a later possession date that nonetheless meets its certificate deadline, (ECF #155, at 6-7; ECF #196, at 9; ECF #202, at 26-28; ECF #205, at 6-10; ECF #206, at 17); that mere economic harm is insufficient to show irreparable harm, (ECF #155, at 6-7; ECF #202, at 11-14; ECF #205, at 9-10); and that Mountain Valley's measurement of loss is unrealistic, speculative, and self-inflicted, (ECF #196, at 9; ECF #202, at 15-24; ECF #205, at 6-10; ECF #206, at 17).

At the hearing, the landowners reiterated these themes and also elicited testimony from Mr. Cooper that Mountain Valley's alleged irreparable harms may not be as severe, may be partially mitigated, and represent only a fraction of Mountain Valley's overall $3.7-billion budget. The landowners could not, however, establish that the harms would not occur absent relief.

As earlier noted, the case law recognizes that Mountain Valley's alleged harms, including economic and non-economic, are irreparable. See Sage, 361 F.3d at 829; see also,

e.g., Dominion Carolina, 218 F. Supp. 3d at 479-80; Rover Pipeline, 2017 WL 5589163, at *4. The courts agree that Mountain Valley's economic losses are irreparable because they cannot be recovered at the end of litigation. See, e.g., Sage, 361 F.3d at 828-29 (treating the gas company's economic harms as irreparable); Columbia Gas Transmission LLC v. 0.85 Acres, 2014 WL 4471541, at *6; cf. Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) ("A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment.").

Regarding scheduling modifications, the District of Maryland succinctly stated the following:

> It is clear that the lack of a preliminary injunction would require [the certificate holder] to modify its construction schedule, deviate from its usual course, expend additional resources, and jeopardize its ability to satisfy its obligations under both its private contracts and its FERC Certificate. It is of no moment that [the holder] could, in theory, construct [the pipeline] in a disjointed manner, temporarily skipping Defendants' parcels of land and then returning to them after a trial is held in this case. Such a course of action would be wasteful and inefficient, and it would serve no purpose other than to delay the inevitable.

Columbia Gas Transmission, LLC v. 76 Acres, 2014 WL 2960836, at *15; cf. Sage, 361 F.3d at 828-29. Next, the court cannot entertain argument about other pending legal challenges for reasons earlier stated, namely, that the NGA shows a clear

congressional intent that certificates are not stayed absent specific instruction by FERC or a court of appeals.  See 15 U.S.C. § 717r(c).  And last, the landowners' concerns about conditions precedent to construction are unfounded because any preliminary injunction issued here is merely coextensive to that which is approved by FERC, nothing more.  Mountain Valley has thus shown that it will suffer irreparable harm absent relief.

Third, the balance of hardships must tip in Mountain Valley's favor for a preliminary injunction to issue.  In Sage, the Fourth Circuit conclusively spoke on this issue in the context of NGA condemnation actions.  See also, e.g., Dominion Carolina, 218 F. Supp. 3d at 480-81.  The Fourth Circuit explained that threat of condemnation of private property "is properly treated as part of the burden of common citizenship," Sage, 361 F.3d at 829 (quoting Kimball Laundry Co. v. United States, 338 U.S. 1, 5 (1949)), and that just compensation is guaranteed by the Fifth Amendment whether property condemned under the NGA is taken immediately or after a trial, id.  "In any event, . . . [any] early loss of use . . . is blunted by [the landowners'] right to draw down the money" that Mountain Valley has indicated it is willing to deposit as assurance for the taking.  Id. (internal quotations omitted and last alteration in original).

Fourth, granting Mountain Valley's request for a preliminary injunction must be in the public interest. Again, <u>Sage</u>'s conclusion on the public interest is dispositive here. In <u>Sage</u>, the Fourth Circuit determined that a certificate is imbued with the public interest pursuant to the authority granted under the NGA. <u>Id.</u> at 830 ("Congress passed the [NGA] and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices. . . . FERC conducted a careful analysis of the [project] and determined that the project will promote these congressional goals and serve the public interest." (citations omitted)); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Columbia Gas Transmission, LLC v. 252.071 Acres</u>, 2016 WL 1248670, at *17.

Accordingly, Mountain Valley's motion for a preliminary injunction granting it possession of the condemned property interests is granted.

## V. Posting of Deposit and Security

Although Mountain Valley has made the requisite showing for a preliminary injunction, it must fulfill an additional requirement before taking immediate possession of the landowners' property interests. The Fourth circuit holds that

the Constitution does not prevent a condemnor from
taking possession of property before just compensation
is determined and paid.  As the Supreme Court said a
long time ago, the Constitution "does not provide or
require that compensation be paid in advance of the
occupancy of the land to be taken.  But the owner is
entitled to reasonable, certain, and adequate
provision for obtaining compensation before his
occupancy is disturbed."

Sage, 361 F.3d at 824 (quoting Cherokee Nation, 135 U.S. at

659).  The Fourth Circuit in Sage found that "adequate

assurance" of just compensation had been provided because the

condemnor "deposited cash with the court in an amount equal to

the appraised value of the interests condemned[, and, i]f the

deposit [was] somehow short, [the condemnor would] be able to

make up the difference" based upon its substantial assets and

its ability to be sued by any aggrieved parties.  Id.

At the February 7 hearing, Mountain Valley proffered

the expert testimony of Todd Goldman, a licensed appraiser hired

by Mountain Valley to perform preliminary appraisal work on the

landowners' property interests.  His preliminary appraisal

report and valuations were admitted into evidence as Plaintiff's

Exhibits 7 and 8.

The landowners did not provide valuations though it is

their ultimate burden to do so at trial.  See United States v.

69.1 Acres of Land, More or Less, Situated in Platt Springs

Twp., 942 F.2d 290, 292 (4th Cir. 1991) (citing United States ex

rel. TVA v. Powelson, 319 U.S. 266, 274 (1943)).  Instead, the
landowners focused on discrediting Mr. Goldman's appraisals.  On
cross examination, the landowners elicited testimony from Mr.
Goldman in an effort to cast doubt on his methodology and on the
compliance of his report with professional standards.  (See ECF
#221, at 24-78.)  The landowners' rebuttal expert, Russel D.
Rice, also a licensed appraiser, echoed that sentiment in his
own declaration and report, filed February 13, 2018, pursuant to
the court's directive.  (See ECF #224.)  Specifically, Mr. Rice
believes that omissions in Mr. Goldman's report "fatally erode
[its] credibility" and that just compensation cannot be known
without "adequate time for a field inspection and evaluation of
all elements of the subject appraisal."  (ECF #224 Ex. A, at
13.)

    Assuming that the landowners' and Mr. Rice's
criticisms are well-founded, the criticisms do not squarely
address the immediate issue.  Determination of the fixed and
definite amount of just compensation is the guaranteed outcome
of a condemnation action, see Lingle v. Chevron U.S.A. Inc., 544
U.S. 528, 536-37 (2005), whereas, at this point, the court need
only set a deposit amount that ensures just compensation
ultimately will be paid once the issue has been thoroughly
investigated, see Sage, 361 F.3d at 824 (stating, as noted, that

"the Constitution does not prevent a condemnor from taking possession of property before just compensation is determined and paid" so long as the condemnees receive "adequate assurance" that just compensation will be paid).  The landowners would have just compensation fully litigated prior to the issuance of the preliminary injunction.  Of course, doing so would defeat the purpose of immediate relief.

In Sage, the Fourth Circuit was apparently satisfied that it could set appropriate assurance based upon the condemnor's deposit of cash in the amount equaling its appraised values of the interests condemned.  361 F.3d at 824.  Thus, to the extent that Sage indicates that there is a burden on Mountain Valley to provide an estimate of value at this juncture, Mountain Valley has carried that burden such that the court has a baseline against which to properly fix the amount of the deposit that Mountain Valley must provide prior to taking possession of the landowners' property interests.

The court is not, however, satisfied with Mountain Valley's estimation.  The landowners and Mr. Rice have raised legitimate concerns over Mr. Goldman's appraisals.  Mr. Goldman's testimony on cross examination revealed as much, as does Mr. Rice's rebuttal.

Additionally, although Mr. Goldman valued a number of property interests at less than $3,000, Mr. Cooper states, as earlier noted, that Mountain Valley offered at least $3,000 for every property interest in this action. (Cooper Construction Decl. ¶ 8.) The court notes similar divergences in value in two other instances. First, Mr. Goldman appraised landowner Paco Land, Inc.'s ("Paco Land") property interests at $20,600 (Pl's Ex. 8), while the offer that Mountain Valley evidently made for the same according to Paco Land's answer was $150,000 (ECF #118, at 6). Second, although Mr. Goldman appraised landowner Western Pocahontas Properties Limited Partnership's ("WPPLP") property interests at $20,200 (Pl's Ex. 8), WPPLP's general partner, Gregory F. Wooten, swears that the value of its property interests "with respect to the pipeline right of way only" are valued at $457,002 including "near-surface coal" that will be "d[ug] and damage[d]" by the pipeline. (Affidavit of Gregory F. Wooten ¶¶ 11, 18.)

The court cannot speculate as to Mountain Valley's rationale underlying these offers, nor does the court know the extent of the interests that Mountain Valley attempted to purchase. Particularly, in the case of Paco Land, it is unknown whether Mountain Valley's offer included any consideration for Paco Land's insistence that it would lose the use of an entire

151.02-acre tract as a result of the approximately 7.56-acre easement. (See id. at 3-6.) The court has recited these examples because it finds them probative of the accuracy of Mountain Valley's appraisal.

Moreover, the court is concerned about the remarkably few landowners from whom Mountain Valley has purchased the necessary easements. It was revealed at the February 7 hearing that Mountain Valley had purchased around only 60% of the necessary easements in the Southern District of West Virginia. Meanwhile, Mountain Valley had purchased around 85% of the easements overall in all three districts, sometimes in excess of 90% in certain counties.

Accordingly, while the court accepts Mountain Valley's proffer of valuation as a basis for estimating the deposit, the court does not find the valuation sufficient to ensure that just compensation will be paid. The court directs the following:

1. Before taking possession, Mountain Valley must deposit with the Clerk a certified or cashier's check in the amount of four times the appraised value according to Mr. Goldman. Provided, however, that for any property interests appraised at $3,000 or less, Mountain Valley must assume that the appraised value is actually $3,001 and adjust its deposit accordingly.

2. Before taking possession, Mountain Valley must post a surety bond in the amount of two times the appraised value according to Mr. Goldman. Again, for any property interests appraised at $3,000 or less, Mountain Valley must assume that the appraised value is actually $3,001 and adjust its surety bond accordingly. The surety bond requirement is in keeping with Federal Rule of Civil Procedure 65(c), which requires that the moving party must "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" before a preliminary injunction may issue.

3. The Clerk is directed to deposit the funds from Mountain Valley's certified or cashier's check pursuant to Federal Rule of Civil Procedure 67 and 28 U.S.C. § 2041.

4. Each landowner is entitled to draw upon Mountain Valley's deposit pursuant to Federal Rule of Civil Procedure 67 and 28 U.S.C. § 2042. To withdraw on the deposit, a landowner must file with the court a Motion to Withdraw Funds. The Motion must identify the parcel identification tag as labeled by Mountain Valley in Exhibit C of the Complaint, list any other individuals or entities sharing ownership in the property interest condemned, and be accompanied by proof of service of the Motion on each such co-owner. Each landowner is entitled to draw upon

the greater of Mountain Valley's appraised value or $3,001, and each landowner is entitled only to the landowner's proportionate share of the property interest.  The landowners are forewarned that, should the value of just compensation owed to them ultimately be less than what they withdrew, they will be liable to Mountain Valley for the balance, with interest.

5. Each landowner is entitled to draw upon Mountain Valley's deposit in an additional amount if an appraised value is provided that is greater than Mountain Valley's appraised value and the court grants the motion next noted.  To do so, a landowner must file with the court a Motion to Withdraw Appraised Funds, which must include a statement from an appraiser as to value and must also comply with the same requirements as a Motion to Withdraw Funds.  Again, the landowners are forewarned that, should the value of just compensation owed to them ultimately be less than what they withdrew, they will be liable to Mountain Valley for the balance, with interest.

6. Any objections to a Motion to Withdraw Funds or a Motion to Withdraw Appraised Funds - whether by Mountain Valley, a landowner, or a non-party to this action - must be made within seven days of receipt of service of the Motion or twenty-one

days of the Motion's filing with the court, whichever is earlier.

## VI. Conclusion

For the foregoing reasons, it is ORDERED that:

1. Mountain Valley's motions to strike be, and hereby are, granted;

2. The landowners' motions to dismiss be, and hereby are, denied as stricken;

3. The landowners' motion for stay of proceedings be, and hereby is, denied; and

4. Mountain Valley's motion for partial summary judgment and immediate access to and possession of the easements condemned in Nicholas, Greenbrier, Summers, and Monroe Counties, West Virginia, be, and hereby is, granted.

Further, the court directs Mountain Valley to post the deposit and security as directed, which is a predicate to Mountain Valley's right to possess the condemned property.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTER: February 21, 2018

John T. Copenhaver, Jr.
United States District Judge