UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MOUNTAIN VALLEY PIPELINE, LLC,

      Plaintiff,

v.                                        Civil Action No. 2:17-cv-04214

AN EASEMENT TO CONSTRUCT,
OPERATE AND MAINTAIN A 42-INCH
GAS TRANSMISSION LINE ACROSS
PROPERTIES IN THE COUNTIES OF
NICHOLAS, GREENBRIER, MONROE,
and SUMMERS, WEST VIRGINIA, et
al.,

      Defendants.

MEMORANDUM OPINION AND ORDER

      Pending is plaintiff Mountain Valley Pipeline, LLC's ("MVP") motion for summary judgment as to defendants (1) Doreen S. Allen; (2) Fredereck M. Osborne; (3) Jo Lynn Blankenship; (4) Mickey D. Osborne; (5) Scott S. Osborne; (6) Robert Jackson Holt; (7) David R. Hughes; (8) heirs of J.H. Harrah; (9) Ira Harrah; (10) Brenda Persinger; (11) Doris Sanford; (12) Johnnie Ray Keener; (13) Brande Nicole Keener; (14) David Harmon; (15) Estate of C.L. Keener; (16) unknown heirs of Martha I. Kessler; (17) unknown heirs of Mary L. Surbaugh; (18) unknown heirs of Nora E. Vandall; (19) unknown heirs of Azel Ford Zickafoose;

(20) unknown heirs of Joseph Orville Zickafoose; and (21)
unknown heirs of Robert C. Zickafoose, filed November 18, 2019.

## I. Background

On October 13, 2017, the Federal Energy Regulatory
Commission issued MVP a certificate of public convenience and
necessity, authorizing MVP to construct and operate a 303.5-
mile-long, 42-inch diameter pipeline from Wetzel County, West
Virginia, to Pittsylvania County, Virginia.  Pl.'s Mem. of Law
in Supp. of Mot. for Summ. J. 3 ("Pl.'s Mem."), ECF No. 483, Ex.
1.  In the Southern District of West Virginia, the pipeline
traverses properties in Nicholas, Greenbrier, Summers, and
Monroe Counties and specifies a compressor station in Fayette
County.  Since MVP could not obtain all the necessary easements
by agreement, MVP initiated this action in this court on October
24, 2017, pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h)
and Federal Rule of Civil Procedure 71.1.  Pl.'s Mem. 3.  MVP
condemned easements across the properties owned by the
defendants.  Pl.'s Mem. 3-4.

On October 27, 2017, MVP filed a motion for partial
summary judgment and immediate access to and possession of the
easements condemned for construction of the MVP project.  The
court granted MVP's motion for partial summary judgment on

2

February 21, 2018, leaving as the only issue in the case the amount of just compensation MVP owes the landowners for the partial taking of their respective properties.  MVP now seeks summary judgment on this sole issue.  Responses were due on December 2, 2019, but the defendants subject to MVP's motion for summary judgment did not respond or otherwise participate in the litigation.  However, on February 13, 2020, the court received a binder from defendant David R. Hughes containing a letter to the court, copies of two letters sent to MVP, and a 33-page memorandum.  The contents of the binder were ordered filed on April 3, 2020.  See ECF Nos. 546, 547.  Although the binder was received well after the response deadline, the court treats the binder as though it were timely filed and will consider its contents.

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine" dispute of material fact

exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

The issue before the court is the amount of just compensation due to the defendants for their respective interests in the property taken by MVP.

"'Just compensation' is that amount of money necessary to put a landowner in as good a pecuniary position, but no better, as if his property had not been taken." United States v. 69.1 Acres of Land, 942 F.2d 290, 292 (4th Cir. 1991).  "[I]t is well settled that in the event of a 'partial taking' -- i.e., a case in which the [condemnor] has taken one part of a larger tract, leaving the remainder to the landowner  -- the measure of just compensation is the difference between the fair and reasonable market value of the land immediately before the taking and the fair and reasonable market value of the portion that remains after the taking."  United States v. Banisadr Bldg. Joint Venture, 65 F.3d 374, 378 (4th Cir. 1995) (citations omitted).  In the event of a temporary taking, "the value of the taking is what rental the marketplace would have yielded for the property taken."  Id.

"The burden of proving the value of the land taken is on the landowner."  69.1 Acres of Land, 942 F.2d at 292 (citing United States v. Powelson, 319 U.S. 266, 274 (1943)).

> However, "if the condemnor is the only party to admit evidence to the Court of the value of the real property taken, the Court may use that evidence to determine the just compensation of the property and enter default judgment against defendant landowners and award the defendants their just compensation as determined by the condemnor."

Dominion Energy Transmission, Inc. v. 2.21 Acres of Land, No.
1:18CV25, 2020 WL 127985, at *2 (N.D. W. Va. Jan. 10, 2020)
(quoting Atl. Coast Pipeline, LLC v. 1.52 Acres, No. 3:17-cv-
814, 2019 WL 148402, at *7 (E.D. Va. Jan. 9, 2019)).

         MVP argues that the court should award defendants
nominal damages because the "landowners have failed to submit
evidence to demonstrate the amount of just compensation they are
owed[,]" and the defendants "have the burden of proof to
demonstrate just compensation[.]"  Pl.'s Mem. 10 (citing Nature
Conservancy v. Machipongo Club, Inc., 419 F. Supp. 390, 405
(E.D. Va. 1976)).  However, the court declines MVP's request to
award only nominal damages because the court has evidence before
it of value, submitted by MVP, which will suffice in this
instance.  Inasmuch as none of these landowners has expressed a
value for these properties, the court is limited to the only
evidence available, which has been provided by MVP's expert,
Todd Goldman ("Goldman").

         In David R. Hughes' filing, he recounts a thorough
explanation of his property, including the existence of four
cabin sites built in the 1800s that he planned to restore with
lumber that was allegedly destroyed with the construction of the
pipeline.  In addition, Hughes explains his plans to develop and
reopen a county road that would allow access to the cabins.

Hughes claims that he can no longer carry out his plans due to the construction of the pipeline.  However, Hughes does not present evidence to the court of the value of the real property taken.

A.  <u>Just Compensation for the Allen/Osborne Landowners</u>

According to MVP's expert and certified appraiser, Goldman, the property owned by Doreen S. Allen, Fredereck M. Osborne, Jo Lynn Blankenship, Mickey D. Osborne, and Scott S. Osborne ("the Allen/Osborne landowners") is comprised of 103 acres of land in Rainelle, Greenbrier County, West Virginia. Todd Goldman Appraisal Report for the Allen/Osborne Property, ECF No. 482, Ex. 10, at 5.  The land contains a single-family residence totaling 2,200 square feet as well as multiple agricultural buildings and a barn.  <u>Id.</u>  The property is now encumbered by MVP's "permanent and temporary access right-of-way" easement totaling 0.85 acres.  <u>Id.</u>  The access right-of-way easement is a 40-foot-wide roadway, which includes a 25-foot permanent easement and a 15-foot temporary easement.  <u>Id.</u> at 7. Goldman determined that the fair market value of the property before the taking was $225,000.00, and the fair market value of the property after the taking is $220,400.00.  <u>Id.</u> at 6. Accordingly, Goldman determined that the diminution in fair market value as a result of the taking is $4,600.00, allocating

$446.25 for the value of the take and $4,153.75 for the value of the diminution of the remainder parcel after the partial taking. Id. Because the Allen/Osborne landowners own 100% interest in the underlying property, they are entitled to $4,600.00.

B.  **Just Compensation for Robert Jackson Holt**

On July 31, 2020, MVP filed a notice of voluntary dismissal, dismissing its claims as to Robert Jackson Holt and stating that the parties had reached agreements on just compensation.  See ECF No. 551.  Due to this voluntary dismissal, MVP's motion for summary judgment as to defendant Robert Jackson Holt is denied as moot.

C.  **Just Compensation for David R. Hughes**

While Hughes expresses an endearing interest in the property, including its interesting history and what had been his plans for the future, he does not express or propose any estimates of the value of that being taken.

According to Goldman, the property owned by David R. Hughes is comprised of 116.64 acres of land in Lindside, Monroe County, West Virginia.  Todd Goldman Appraisal Report for the Hughes Property, ECF No. 482, Ex. 12, at 5.  There are no improvements on the property.  Id.  The property is now

8

encumbered by MVP's permanent pipeline easement totaling 0.36 acres and MVP's temporary workspace easement totaling 0.35 acres.  Id.  Goldman determined that the fair market value of the property before the taking was $221,600.00, and the fair market value of the property after the taking is $217,000.00. Id. at 6.  Accordingly, Goldman determined that the diminution in fair market value as a result of the taking is $4,600.00, allocating $883.50 for the value of the take and $3,716.50 for the value of the diminution of the remainder parcel after the partial taking.  Id.  The value of the temporary workspace easement is $199.50, which is included in the value of the take figure.  Id. at 92.  Because Hughes owns 100% interest in the underlying property, he is entitled to $4,600.00.

### D.  Just Compensation for the Harrah Landowners

        According to Goldman, the property owned by the heirs of J.H. Harrah is comprised of 119 acres in Meadow Bridge, Summers County, West Virginia.  Todd Goldman Appraisal Report for the Harrah Property, ECF No. 482, Ex. 13, at 5.  The land contains a single-family residence totaling 1,445 square feet as well as multiple agricultural buildings, barns, woodsheds, and chicken houses.  Id.  The property is now encumbered by MVP's permanent pipeline easement totaling 3.61 acres and MVP's temporary workspace easement totaling 5.16 acres.  Id.  Goldman

determined that the fair market value of the property before the taking was $217,000.00, and the fair market value of the property after the taking is $181,500.00.  Id. at 6. Accordingly, Goldman determined that the diminution in fair market value as a result of the taking is $35,500.00, allocating $8,510.70 for the value of the take and $26,989.30 for the value of the diminution of the remainder parcel after the partial taking.  Id.  The value of the temporary workspace easement is $2,554.20, which is included in the value of the take figure. Id. at 95.

The record title owners of the property are the heirs of J.H. Harrah.  Pl.'s Mem. 15.  During its investigation, MVP identified Ira Harrah, Brenda Persinger, and Doris Sanford as individuals holding an interest in the property.  Pl.'s Mem. 15. However, according to MVP, "[t]here are a number of other landowners who claim an interest as heirs of J.H. Harrah or otherwise hold an interest in the property."  Pl.'s Mem. 16. The just compensation for the partial takings on the Harrah Landowners' property is $35,500.00.

E.  <u>Just Compensation for the Keener/Harmon Landowners</u>

        According to Goldman, the property owned by the C.L.
Keener heirs is comprised of 1.65 acres in Quinwood, Greenbrier
County, West Virginia.  Todd Goldman Appraisal Report for the
Keener Property, ECF No. 482, Ex. 14, at 5.  There are no
improvements on the property.  <u>Id.</u>  The property is now
encumbered by MVP's permanent pipeline easement totaling 0.21
acres and MVP's temporary workspace easement totaling 0.33
acres.  <u>Id.</u>  Goldman determined that the fair market value of
the 100% interest in the property before the taking was
$10,200.00, and the fair market value after the taking is
$2,550.00.  <u>Id.</u> at 6.  Accordingly, Goldman determined that the
diminution in fair market value as a result of the taking is
$7,650.00, allocating $1,915.80 for the value of the take and
$5,734.20 for the value of the diminution of the remainder
parcel after the partial taking.  <u>Id.</u>  The value of the
temporary workspace easement is $613.80, which is included in
the value of the take figure.  <u>Id.</u> at 95.

        During its investigation, MVP identified a number of
potential heirs of C.L. Keener that hold an interest in the
property.  Pl.'s Mem. 17.  A number of these identified
potential heirs have signed easements with MVP and have been
paid compensation by MVP.  Pl.'s Mem. 17.  At the time of

filing, MVP acquired easements from and paid compensation to
landowners comprising 40.6047% of the total ownership.  Pl.'s
Mem. 17.  MVP has also identified Johnnie Ray Keener, Brande
Nicole Keener, and David Harmon (the "Keener/Harmon Landowners")
as C.L. Keener heirs who have not settled with MVP.  Pl.'s Mem.
17.  Presumably, 59.3953% of just compensation is owed to
Johnnie Ray Keener, Brande Nicole Keener, and David Harmon.  The
just compensation for the partial takings on the Keener/Harmon
Landowners' property is $4,543.74.

F.  Just Compensation for the Zickafoose Landowners

        According to Goldman, the property owned in part by
the unknown heirs of Martha I. Kessler, the unknown heirs of
Mary L. Surbaugh, the unknown heirs of Nora E. Vandall, the
unknown heirs of Azel Ford Zickafoose, the unknown heirs of
Joseph Orville Zickafoose, and the unknown heirs of Robert C.
Zickafoose ("the Zickafoose Landowners") is comprised of 64.52
acres in Meadow Bridge, Greenbrier County, West Virginia, in
which each set of the six sets of heirs above owns a 6.24833333%
interest.  Todd Goldman Appraisal Report for the Zickafoose
Property, ECF No. 482, Ex. 15, at 5-6.  There is a single-wide
mobile home on the property.  Id. at 5.  The property is now
encumbered by MVP's permanent pipeline easement totaling 2.08
acres, temporary workspace easement totaling 2.84 acres,

additional temporary workspace easement totaling 1.23 acres, and "temporary/permanent" access right-of-way easement totaling 0.08 acres.  Id. at 6.  The access right-of-way easement is a 40-foot-wide roadway, which includes a 25-foot permanent easement and a 15-foot temporary easement.  Id. at 7.  Goldman determined that the fair market value of the 100% interest in the property before the taking was $127,500.00, and the fair market value after the taking is $102,000.00.  Id.  Accordingly, Goldman determined that the diminution in fair market value as a result of the taking is $25,500.00, allocating $5,320.00 for the value of the take and $20,180.00 for the value of the diminution of the remainder parcel after the partial taking.  Id.  The value of the temporary workspace easement is $1,363.20.  Id. at 104. The value of the additional temporary workspace easement is $590.40.  Id.  The value of the temporary/permanent access right-of-way easement is $38.40.  Id.  The values for the temporary workspace easement, the additional temporary workspace easement, and the temporary/permanent access right-of-way are included in the value of the take figure.  Id.

MVP was able to identify a number of landowners "who claim an interest as Zickafoose heirs or otherwise hold an interest in the property" that subsequently signed easements with MVP and have been paid compensation by MVP.  Pl.'s Mem. 18.

13

At the time of filing, MVP acquired easements from and paid compensation to landowners comprising 62.51% of the total ownership.  Pl.'s Mem. 18.  Presumably, 37.49% of just compensation is owed to these remaining partial interest owners. The just compensation for the partial takings on the Zickafoose Landowners' property is $9,559.95.

G.  **Prejudgment Interest**

The defendants are also entitled to prejudgment interest on the amount of just compensation from the date of the taking, October 24, 2017, to the date of the judgment, August 21, 2020.  See United States v. Eltzroth, 134 F.3d 632, 638 (4th Cir. 1997) ("The date of taking 'fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues.'" (quoting United States v. Dow, 357 U.S. 17, 22 (1958))).  "The choice of an appropriate rate of interest is a question of fact, to be determined by the district court[.]" Washington Metro. Area Transit Auth. v. One Parcel of Land in Montgomery Cnty., Md., 706 F.2d 1312, 1322 (4th Cir. 1983). "Judges in the District have previously observed that, 'in order to make the injured parties whole, the prejudgment interest should reflect the injured party's borrowing costs.'" 2.21 Acres of Land, 2020 WL 127985, at *3 (citing Dijkstra v.

14

Carenbauer, No. 5:11-CV-152, 2015 WL 12750449, at *7 (N.D. W. Va. July 29, 2015)).

"Applying this principle, the rate at which prejudgment interest is to be calculated should reflect the rate best representing the Defendants' borrowing cost during the period of the loss of use of the monies owed.  To determine this, the court will apply the average federal interest rate from [October 2017]." Id.  During that time, the federal interest rates for marketable interest-bearing debt averaged 2.1%.  TreasuryDirect.gov, Average Interest Rates, October 2017, https://www.treasurydirect.gov/govt/rates/avg/2017/2017_10.htm (last visited Aug. 14, 2020).  Accordingly, the court will award prejudgment interest on the amount of just compensation, from October 24, 2017, to August 21, 2020, to be calculated at the rate of 2.1% per annum.

IV.  Conclusion

For the foregoing reasons, it is ORDERED that

1. MVP's motion for summary judgment as to defendants Doreen S. Allen, Frederick M. Osborne, Jo Lynn Blankenship, Mickey D. Osborne, and Scott S. Osborne is granted, and MVP is directed to pay $4,600.00 to these defendants, plus prejudgment interest on this amount at the rate of 2.1% per annum;

15

2. MVP's motion for summary judgment as to defendant Robert Jackson Holt is denied as moot;

3. MVP's motion for summary judgment as to defendant David R. Hughes is granted, and MVP is directed to pay $4,600.00 to David R. Hughes, plus prejudgment interest on this amount at the rate of 2.1% per annum;

4. MVP's motion for summary judgment as to the heirs of J.H. Harrah (including among others Ira Harrah, Brenda Persinger, and Doris Sanford) is granted, and MVP is directed to pay $35,500.00 to these defendants, plus prejudgment interest on this amount at the rate of 2.1% per annum;

5. MVP's motion for summary judgment as to Johnnie Ray Keener, Brande Nicole Keener, and David Harmon, is granted, and MVP is directed to pay $4,543.74 to these defendants, plus prejudgment interest on this amount at the rate of 2.1% per annum; and

6. MVP's motion for summary judgment as to the unknown heirs of Martha I. Kessler, the unknown heirs of Mary L. Surbaugh, the unknown heirs of Nora E. Vandall, the unknown heirs of Azel Ford Zickafoose, the unknown heirs of Joseph Orville Zickafoose, and the unknown heirs of Robert C. Zickafoose is granted, and MVP is directed to pay $9,559.95 to these

16

defendants, with each set of the six sets of heirs above
having an equal one-sixth interest therein, plus prejudgment
interest on this amount at the rate of 2.1% per annum.

The Clerk is directed to forward copies of this
written opinion to all counsel of record and to any
unrepresented parties.

ENTER: August 21, 2020

John T. Copenhaver, Jr.
Senior United States District Judge